KtjNzig, Judge,
delivered the opinion of the court:
In these consolidated civilian pay cases, plaintiffs, married female employees of the Panama Canal Government or a Canal Zone office of a United States Government agency, claim they have been deprived by regulation of what is known as an overseas tropical differential allowance. Because the regulations correctly deny plaintiffs’ entitlement to the tropical differential and because we find no abuse of discretion, we hold for defendant.
Plaintiffs’ attack on the denial of the tropical differential •requires scrutiny of the statutory underpinnings of the Canal Zone Government and its wage and employment practices.
In 1912, Congress established a government for the Canal Zone and authorized the President to appoint a governor. Act of Aug. 24, 1912, 37 Stat. 560, 561. Congress also empowered the President to fix compensation of Canal Zone Government employees in an amount not to exceed by more than 25 percent that paid to persons employed by the U.S. Government in the continental United States for the same or similar services. See 2 Canal Zone Code (2 C.Z.C.) § 81(c) (1934).[1] President Wilson exercised this authority. Exec. Order No. 1888,7 Pan. Can. Pec. 228 (Feb. 2, 1914).
All U.S. citizens employed in the Canal Zone originally received a tropical differential of 25 percent of their base salary. This practice began in 1914 and continued until 1964. Meanwhile, in 1955, the U.S. and Panama entered into a treaty which granted qualified Panamanian citizens the right *270 to equal employment opportunity in U.S. Canal Zone offices. The treaty provided that the same basic wages would be paid to Panamanians as paid to U.S. citizen-employees. However, the agreement permitted U.S. citizens to receive a tropical differential allowance in addition to their base fay. Memorandum of Understandings to Treaty of Jan. 25, 1955, implemented by Act of July 25, 1958, 72 Stat. 405, et seq.
Congress had also empowered the President to delegate his Canal Zone administrative powers. This legislation (codified as 2 C.Z.C. § 155 (1962)) provides:
The President may delegate any authority vested in him by this subchapter [governing Canal Zone administration], and may provide for the redelegation of any such authority. [2 C.Z.C. § 155 (b) (1962) ].
Initially, the President delegated his Canal Zone authority to the Secretary of War. Exec. Order No. 9746, 3 C.F.R. 148 (Supp. 1946). Later, President Eisenhower redelegated it to the Secretary of the Army. Exec. Order No. 10595,3 C.F.E.. 58 (Supp. 1955). Finally, in 1958, the President assigned to the Secretary of the Army the Presidential duties to direct the wage and employment practices of the Canal Zone Government (2 C.Z.C. § 142 (1962))[2] and to coordinate the departments engaged in Canal Zone activities by issuing regulations (2 C.Z.C. §155(a) (1962)).[3] Exec. Order No. 10794, 3 C.F.R. 76-77 (Supp. 1958). In 1964, the President supplemented Exec. Order No. 10794 by, among other items, per *271 mitting the Secretary of the Army to exclude employees from the compensation provisions of the Canal Zone Code (a power now given to the President by 2 C.Z.C. § 142(b) (1) (1962), see note 2, supra). Exec. Order No. 11171, 3 C.F.R. 468 (1965).[4]
Pursuant to the statutes and Executive Orders, the Secretary of the Army issued various regulations. See 5 C.F.R. § 1201 (1964), now 35 C.F.R. § 253 (1975). One of the provisions reduced the tropical differential (previously set at 25 percent for all employees) to 15 percent for some employees and eliminated it altogether for others. 5 C.F.R. § 1204.12 (Supp. 1966).
This action was immediately questioned. Hendricks v. United States, Ct. Cl. No. 202-68 (filed July 15, 1968). Claimants attacked the 1964 regulations and sought recovery of lost differential pay originating with its denial in October 1966. The parties settled the prior action by agreement on May 7, 1971.[5]
Perhaps spurred in part by that case, in 1971 the Secretary of the Army altered the Canal Zone regulations covering the tropical differential. The 1971 amendments provided in part:
§ 253.135. Tropical differential.
* ❖ * * *
(b) The tropical differential shall be paid to employees who are U.S. citizens except as provided in the following subparagraphs:
(1) When a U.S. citizen employee is married to another U.S. citizen employee, the differential may be paid to one spouse only.
(2) When a U.S. citizen employee is married .to a person not employed by a department such employee is *272 eligible to receive the differential only if such, employee is the member of the family whose job may reasonably be deemed to be the job which determines the location of the family in the area. The spouse of a person serving-in the U.S. military forces in the area shall not be deemed to be a person whose job determines such location.
(3) A child or stepchild of a resident of the Canal Zone or the Republic of Panama who is under 21 years-of age and unmarried is not eligible.
[35 Fed. Reg. 19750-51 (1970) (effective Jan. 10,1971)]..
On April 28,1974, further amendments to the tropical differential regulations became effective. 35 C.F.R. § 253., 135 (b) (2) was altered to provide:
The U.S. citizen employee whose spouse is a member-of a U.S. military service stationed in the area may be-paid the differential only to the extent that the amount of the differential otherwise payable exceeds the amount of the total housing allowance (BAQ plus the housing-portion of the station allowance) established for Panama City, Republic of Panama for a military member having the same rank and family size as the employee’s military spouse. The U.S. citizen employee-whose spouse, by reason of U.S. Government employment in the Republic of Panama, is eligible under the-Department of State Standardized Regulations (Government Civilians, Foreign Areas) (DSSR) for a living quarters allowance (-LQA) may be paid the differential only to the extent the amount of the differential otherwise payable exceeds the amount of LQA established for Panama City, Republic of Panama by-sections 920 and 932.22 of the DSSR for one in the same-quarters group and with the same family size as -the employee’s spouse. [39 Fed. Reg. 13650-51 (1974)].
Plaintiffs in the instant action contend that they have been, illegally denied tropical differential allowances by the Secretary of the Army’s promulgation of these amendments-Plaintiffs say that the altered tropical differential regulations' are void. They believe they should receive lost differential pay based on prior.practice of granting the full 25-percent differential to all U.S. citizens employed by the-Canal. Zone Government.
We determine that the 1971 and 1974 amendments to the tropical differential regulations are valid. The Secretary of *273 tbe Army correctly denied the allowance to certain employees, including plaintiffs. Therefore, we hold for defendant.
Plaintiffs mount a six-tiered attack on the 1971 and 1974 amendments to the tropical differential regulations, arguing that they are at odds with various statutes.[6] Plaintiffs contend that the amendments conflict with: (1) 2 C.Z.C. § 14& (1962)[7] which grants entitlement to the tropical differential allowance; (2) 2 C.Z.C. § 145 (1962)[8] calling for uniform application of Canal Zone pay rates; (3) 2 C.Z.C. §101 (1962)[9] granting power to the Governor to appoint Canal Zone employees and fix compensation; (4) 5 U.S.C. §7152 (Supp. III, 1973)[10] empowering the President to promulgate rules to forbid discrimination based on marital status in Federal employment and proscribing Federal employment benefits discriminating on the basis of sex or marital status; (5) 5 U.S.C. §7154 (1970)[11] prohibiting discrimination in establishment of General Schedule Pay rates based on sex or marital status; and (6) 5 U.S.C. § 5301 (1970) setting forth the general Federal philosophy of equal pay for equal work.[12]
None of these statutes are of help to plaintiffs.
(1) 2 O.Z.O. § Ufi {Tropical Differential):
Plaintiffs’ main attack on the Secretary of the Army’s amendments denying them tropical differential allowance is based on 2 C.Z.C. §146 (1962). This statute provides in part:
§ 146. Additional allowance and differential.
In addition to established basic compensation, there shall be paid to each employee who is a citizen of the *274 United States such amounts as the head of the department concerned determines to be payable, as follows:
# ‡ H: #
(2) an overseas (tropical) differential not in excess of an amount equal to 25 percent of the aggregate amount of the rate of basic compensation so established and the amount of the allowance provided in accordance with paragraph (1) of this section. [2 C.Z.C. § 146(2) (1962)].
Plaintiffs contend that the altered regulations are void because they conflict with section 146. According to plaintiffs, section 146 mandates payment of the tropical differential and the Secretary of the Army’s refusal to pay is illegal. For several reasons there is no conflict between the statute and the regulations. The action of the Secretary denying the differential to plaintiffs, is correct.
Plaintiffs’ section 146 argument is based upon an erroneous interpretation of the statute. Plaintiffs emphasize the portion of the codification which provides that the differential “shall be paid.” From this plaintiffs attempt to have the court find the payment mandatory. However, plaintiffs conveniently ignore the remainder of section 146 which calls for payment of the tropical differential in “such amounts as the head of the department concerned deterrm/nes to be payable.” Given this, section 146 is not mandatory as plaintiffs would urge, but is discretionary. In short, the Secretary of the Army’s tropical differential amendments represent an exercise of discretion in excluding plaintiffs.
Moreover, under 2 C.Z.C. § 142(b) (1) (see note 2, supra) the Secretary of the Army (by delegation of power from the President in Exec. Order No. 11171, supra) has the authority to “exclude any employee or position from this subchapter [governing Canal Zone employment practices].’’ Taken at face value, this statute grants ample authority to the Secretary to exclude plaintiffs from the tropical differential payments. Plaintiffs make much of a statement by Congressman Hemphill purporting to clarify section 142(b) (1). This discussion represents an attempt to restrict the President’s power to exclude positions to “the Governor of the Canal *275 Zone, the Deputy Governor, the President of the Panama Canal, and other similar officials.” 104 Cong. Kec. 11,387 (1962). However, absent further evidence of Congressional desire to so limit subsection 142(b) (1), the olear wording of the statute is sufficient evidence that Congress did not intend this legislation to be so limited. “The unambiguous wording of a statute shall be given its plain and commonly understood meaning.” Sharples v. United States, 209 Ct. Cl. 509, 516, 533 F. 2d 550, 553 (1976); Selman v. United States, 204 Ct. Cl. 675, 680, 498 F. 2d 1354, 1356 (1974). If Congress had enacted subsection 142(b) (1) to apply as narrowly as believed by Congressman Hemphill, it could have so provided. The statute unambiguously permits the Secretary to exclude amy employee from the Canal Zone wage and employment practices provisions. As stated by the Fifth Circuit Court of Appeals in Leber v. Canal Zone Central Labor Union, 383 F. 2d 110 (5th Cir. 1967), cert. denied sub nom. Bramlett v. Leber, 389 U.S. 1046 (1968) :
A reading of all parts of the su'bchapter and an understanding of the purpose of the [tropical] differential lead us to conclude that the Secretary could make reasonable exclusions of United States citizens from the benefits of the differential. [Id. at 119].
We agree with the court’s reasoning in Leber. The Secretary of the Army under 2 C.Z.C. § 142(b) (1) has authority to exclude plaintiffs from the benefits of the tropical differential allowance.
Finally, although plaintiffs fail expressly to argue otherwise, it is clear that the amended regulations do not constitute an abuse of discretion. We could not find the regulations valid if the Secretary had arbitrarily excluded certain individuals. However, the amended regulations have a rational basis or purpose. They constitute a valid exercise of discretion. As stated by the court in Port Authority v. United States, 193 Ct. Cl. 108, 432 F. 2d 455 (1970) (relying on Udall v. Tallman, 380 U.S. 1, 16 (1965)) :
Where administrative control has been authorized by Congress, the judicial function is exhausted when there is found to be a rational basis for the conclusions ap *276 proved by the administrative body. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286-87 * * * (1934). [Port Authority, supra, 193 Ct. Cl. at 120, 432 F. 2d at 461].
The amendments which plaintiffs attack seek to provide a tropical differential “incentive” to encourage TJ.S. citizens to work in the Canal Zone. The regulations now exclude those TJ.S. citizens who would not reasonably demand additional' inducement to pursue employment in the Canal Zone. As found by the court in Leber, supra:
The purpose of the differential is admitted to be an inducement to get American citizens to work overseas in so-called hardship areas and to alleviate some of the financial burdens of taking such employment. * * * \Id. at 120 (emphasis added)].
The 1971 regulations emphasize this purpose in the provisions allowing for periodic review and adjustment:
[T]o the extent necessary to furnish a suitable incentive-in recruitment of qualified personnel and to provide pay benefits substantially equal to those accorded TJ.S. citizens employed by the Federal Government in comparable foreign areas. [35 C.F.R. § 253.135(a) (1975)].
So long as the Secretary’s regulations are rationally calculated to exclude only those employees for whom the incentivé-is unnecessary, we cannot say that they constitute an abuse of discretion. A careful scrutiny of the exclusions demonstrates that the regulations are properly drawn.
The 1971 amendments exclude four categories of employees. First, those whose spouse is also a Government employee and who is the family member who has elected to-receive the differential. Second, those employees whose presence in the Canal Zone is attributable to the job of his or her spouse. Third, an employee whose spouse serves in the military and receives rent-free quarters or quarters allowance.. Fourth, an employee who is under 21, unmarried and the child or stepchild of a resident of the Canal Zone or the-Eepublic of Panama. Such a person would usually not maintain a separate household. Significantly, each of these categories provides an example of a situation where the excluded *277 employee would have little need for inducement to work in the Canal Zone.
The 1974 alterations also emphasize the reasonableness of the Secretary’s decision. The Secretary deleted the second category of exclusions because it proved too difficult to administer and relaxed the third category to allow a partial differential where it exceeded the quarters allowance of a spouse because it might be necessary to lure some families into the Canal Zone.
Eather than constituting arbitrary exclusions, the regulations quite rationally deny the allowance for U.S. citizen-employees in cases where no incentive is required.
The amended regulations do not conflict with 2 C.Z.C. § 146. 'Section 146 grants discretion to the Secretary of the Army to decide whether or not payment of the 'allowance is necessary. Section 142(b) (1) further permits the Secretary to exclude employees from the Canal Zone Code employment provisions. Such discretion has not been abused in the amendments to 35 C.F.R. § 235.135(b). Therefore, plaintiffs cannot prevail on their argument that the differential is required by 2 C.Z.C. § 146.
(2) # C.Z.C. $145 (Uniform Canal Zone Compensation Rates):
Plaintiffs further argue that the amended regulations are invalid because they create an impermissible disparity in compensation rates. 2 C.Z.C. §§ 144-45 (1962) compel uniform application of basic compensation rates.
§ 144. Compensation.
(a) The head of each department, in accordance with this subchapter, shall establish, and from time to time may revise, the rates of basic compensation for positions and employees under his jurisdiction. [2 C.Z.C. § 144(a) (1962)].
§ 145. Uniform application of standards and rates.
The established employment standards and rates of basic compensation established pursuant to sections 143 *278 and 144 of this title shall be applied uniformly, irrespective of whether the employee or individual concerned is. a citizen of the United States or a citizen of the Republic of Panama. [2 C.Z.C. §145 (1962)].
Plaintiffs contend that the amendments create a disparity of pay rates in violation of section 145 and are thereby invalid. Again, plaintiffs misconstrue the Canal Zone Code. There is no conflict between the amended regulations and the statutes.
Statutes, regulations, and treaties have consistently differentiated basic compensation (which must be uniform per section 145) from the differential allowance. Compensation is payment for the rendering of services. The allowance is merely to encourage the presence of U.S. citizen-employees in the Canal Zone. To this end, section 146, supra, contains the following phraseology: “In addition to established basic compensation, there shall be paid * * * an overseas (tropical) differential * * *” 2 C.Z.C. § 146(2) (1962). Further, 2 C.Z.C.. § 148 (1962) recognizes the same distinction in providing for the method of computation of benefits based on compensation (such as insurance, disability and overtime) :
[For purposes of computing benefits based on salary} [t]he basic compensation of each employee * * * shall include the rate of basic compensation established for his. position, and the amou/nt of the allowance and differential determined, in the manner respectively provided by sections 144 and 146 [the tropical differential] of this title. [2 C.Z.C. §148(6) (1962)].
To the same effect, see the provisions of the 1955 U.S.Panama treaty discussed above. 72 Stat. 405, et seq.
The tropical differential allowance is an item separate and apart from basic compensation. Accordingly, there is no mandatory requirement for uniform application of the allowance despite the fact that basic compensation must be equal as required in section 145. In short, the amended regulations are not void measured against sections 144 — 45 of the Canal Zone Code.
*279 (3) % O.Z.O. %101 {Governor Fixes Compensation) :
The third Canal Zone Code section relied upon by plaintiffs is 2 C.Z.C. § 101 (1962). Section 101 provides:
§ 101. Appointment and compensation of Government employees.
(a) Except as otherwise provided by law, and subject to the supervision provided by section 31 of this title, the 'Governor shall:
“(1) appoint all officers and employees of the Canal Zone Government; and
“(2) prescribe the compensation of officers and employees of the Canal Zone Government, and establish their conditions of employment. * * *”
(b) Compensation prescribed by the Governor under this section may not exceed, in any case, by more than 25 percent, the compensation paid for the same or similar services to persons employed by the Government in the continental United States. * * * [2 C.Z.C. § 101 (1962)].
Plaintiffs would say the Governor under section 101 must prescribe the compensation, i.e., not the 'Secretary of the-Army. This section, like the ones already discussed, is of no-help to plaintiffs.
Section 101 speaks in terms of compensation. Compensation is different from the tropical differential allowance.. See -Part (2), supra. If, as plaintiffs allege, section 101 is-mandatory, it does not conflict with the tropical differential statute or regulations which allow for payment of the differential within the discretion of the Secretary of the Army.. See Part (1), supra.
Moreover, section 101 clearly states that it applies “except-as otherwise provided by law A If there is a conflict between section 101 and section 146 (under which the allowance has-been excluded), the latter statute would prevail. Section 146-is discretionary. Again, plaintiffs may not win based on use-, of section 101.
In addition, section 101 states that it applies “subject to-the supervision provided by section 31.” Section 31 requires; *280 that tbe Governor be supervised by the President or bis designated representative (now the Secretary of the Army, see Exec. Order No. 10595 supra) :
§ 31. Carnal Zone Government; administration and fwne-tions generally.
The Canal Zone Government, an independent agency of the United States, shall:
(1) be administered, under the supervision of the President or such officer of the United States as may be designated by him, by a Governor of the Canal Zone. * * * [2 C.Z.C. §31 (1962)].
Even if the Governor is required to pay the full differential to all employees, the Secretary of the Army’s authority transcends the power of the Governor. If there is a conflict between the powers of the Governor and those of the Secretary ■of the Army, those of the latter are paramount and the .amended regulations under attack are valid, notwithstanding section 101,
Finally, the major premise of plaintiffs’ section 101 argument (that the Governor must pay the full differential to all ■employees) is also erroneous. Section 101, like section 146, is not cast in mandatory terms. The authority of the Governor to set pay rates is discretionary within the 25 percent limit .and not mandatory. Again, plaintiffs fail to carry their argument that the differential payment is mandatory.
In short, the amendments to the tropical differential regulations excluding plaintiffs are not overcome by section 101 ■of the Canal Zone Code.
(4) 5 O.S.C. § 715% (Rules and Regulations May Not Discriminate):
Plaintiffs further attack the amendments to the tropical ■differential regulations as invalid in light of 5 U.S.C. § 7152 (Supp. III, 1973), amending 5 U.S.C. §7152 (1970).[13] This *281 statute allows the President to issue rules preventing discrimination in Federal employment based on marital status. It also prevents implementation of regulations which sexually discriminate between married males and married females.
§ 7152. Marital status.
(a) The President may prescribe rules which shall prohibit, as nearly as conditions of good administration warrant, discrimination because of marital status in an Executive agency or in the competitive service.
(b) Regulations prescribed under any provision of this title, or under any other provision of law, granting benefits to employees, shall provide the same 'benefits for a married female employee and her spouse and children as are provided for a married male employee and his spouse and children. * * * [5 U.S.C. § 7152 (Supp. Ill, 1973)].
The amendments to the tropical differential regulations do not violate the proscriptions of this regulation.[14]
The amended regulations are not at odds with subsection 7152 (a). In this subsection the President is given the authority to promulgate rules to prevent marital discrimination. Plaintiffs fail to cite any such rules which would invalidate-the amended tropical differential regulations. Moreover, discrimination based upon maritial status is to be proscribed “as nearly as conditions of good administration warrant.” As we have seen in Part (1), supra, the amendments are- *282 ■calculated to exclude those U.S. citizens for whom no Canal .'Zone employment incentive is necessary. As such, not only do the regulations represent a proper and rational exercise ■of discretion, but they also have an important administrative purpose. Accordingly, the amended regulations are not invalid in comparison with 5 U.S.C. § 7152(a).
Nor do they conflict with subsection 7152(b). This portion of the statute prevents sex discrimination between married males and married females in the granting of Federal employment benefits. Significantly, the tropical differential regulations discriminate not on the basis of sex, but on the basis of age and marital status.[15] Again, the amended regulations do not violate subsection 7152 (b).
'(5) 5 U.S.O. § 7154- {General Schedule Pay Bates May Not Discriminate):
Plaintiffs also argue that the amended regulations offend the provisions of 5 U.S.C. § 7154 (1970). This statute is designed to prevent discrimination based on sex or marital .•status in setting the General Schedule Pay Bates:
§ 7154. Other 'prohibitions.
‡ ‡ ‡
(b) In the administration of * * * subchapter III of chapter 53 * * * of this title [fixing General Schedule Pay Bates], discrimination because of race, color, creed, sex or marital status is prohibited with respect to an individual or a position held by an individual. [5 XJ.S.C. § 7154(b) (1970)].
However, subsection 7154 (b) does not invalidate the tropical differential amendments. Once again, plaintiffs attempt to confuse the payment of compensation with the incentive nature of the differential allowance. Subsection 7154(b) prohibits discrimination in the General Schedule Pay Bates. The •General Schedule Pay Bates deal solely with compensation for services rendered. It is separate and apart from the trop *283 ical differential allowance. See Part (2), sufra. Plaintiffs •cannot use subsection 7154(b) to invalidate the Secretary’s iregulations.
(6) 5 U.S.O. § 5301 {Equal Pay for Equal Worle) :
Finally, plaintiffs suggest that the amended regulations ■violate the provisions of 5 U.S.C. § 5301(1970):
§ 5301. Policy.
(a) It is the policy of Congress that Federal pay fixing for employees under statutory pay systems be based on the principles that—
(1) there be equal pay for substantially equal work; * * * [5 TJ.S.C. §5301 (a)(1) (1970)].
'Section 5301 obviously applies only to comfensation. We take no issue with the laudible general policy underlying Federal employment compensation. However, for the same reasons that other statutes cited by plaintiffs based on comfensation do not invalidate the regulations pertaining to the tropical differential allowance, neither does section 5301. See Parts (2), (3) and (5), sufra. Subsection 5301(a)(1) casts no aspersions on the Secretary of the Army’s tropical differential regulations.[16]
In summary, the regulations promulgated by the Secretary of the Army excluding plaintiffs from the ambit of the tropical differential allowance, are valid. The Secretary is not required to pay an allowance to plaintiffs based on the provisions of 2 C.Z.C. § 146 (Tropical Differential). Nor did the regulations constitute an abuse of discretion. The regulations do not conflict with the provisions of 2 C.Z.C. § 146 (Tropical Differential), § 145 (Uniform Canal Zone Compensation Nates) or § 101 (Governor Fixes Compensation). *284 Nor are they at odds with. 5 U.S.C. § 7152 (Rules and Regulations May Not Discriminate), § 7154 (General Schedule Pay Rates May Not Discriminate) or § 5301 (Equal Pay for Equal Work). Therefore, plaintiffs have been unable to establish a right to receive the differential and defendant must prevail.
Accordingly, for the reasons stated above, plaintiffs’ motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted and the petitions-are dismissed.

 This power is now placed in the hands of the Governor and the heads of executive departments. 2 C.Z.C. §§ 101, 144, 76A Stat. 14-15, 17 (1962).
The current codification of the Canal Zone Code is found in 76A Stat. Per 1 C.Z.C. § 1(b) (1962), we shall hereinafter cite such codification by use of the Canal Zone Code equivalents.

 2 C.Z.C. § 142 (1962) provides In part:
“§ 142. General rules governing wage and employment practices.
“(a) The head of each department shall conduct the wage and employment practices In the Canal Zone of his department in accordance with the:
“(1) principles established in item 1 of the Memorandum of understandings set forth in section 1(b) of [72Stat. 405] * * * ;
“(2) provisions of this subchapter;
“(3) regulations promulgated by, or under the authority of, the President* * *;
“(4) provisions of applicable law.
“(b) To the extent he deems appropriate, the President may:
“(1) exclude any employee or position from this subchapter or from any provision of this subchapter; * * *.” [2 C.Z.C. § 142 (1962)].

 2 C.Z.C. § 155(a) (1962) provides:
“The President shall coordinate the policies and activities of the respective departments under this subchapter, and may promulgate regulations necessary and appropriate to carry out the provisions and accomplish the purposes of this ¡subchapter.” [2 C.Z.C. § 155(a) (1962)].

 Exec. Order No. 11171 provides in part:
“Subject to tbe further provisions of this order, there is delegated to the Secretary of the Army the authority vested in the President * * *
“(1) To exclude any employee or position from any or ail provisions of [the Canal Zone Code Wage and Employment Practices statutes] * * *” [Exec. Order No. 11171, § 2(a)(1), 3 C.F.R. 468 (1965)].

 The prior suit has no impact on the present controversy as the instant action seefcs recovery for lost differential allowances accruing after Jan. 9, 1971. The settlement agreement specifically provided that it was made without prejudice to claimants’ right to recover additional amounts for periods subsequent to Jan. 9,1971.

 Plaintiffs’ petition omits a jurisdictional statement. A cursory reading of the claim would appear to reveal that plaintiffs would base jurisdiction on the statutes which allegedly invalidate the regulations. However, a closer analysis makes it clear that plaintiffs in fact sue for pay under the Tucker Act, 28 U.S.C. § 1491 (1970). In other words, if plaintiffs ean successfully attack the amended regulations, they must he paid the tropical differential, and the current action becomes a classic pay suit under the Tucker Act.

 The applicable language of section 146 is contained in Part (1), infra.

 See Part (2), infra, for full text of section 145.

 See Part (3), Infra.

 See Part (4), infra.

 See Part (5), infra.

 See Part (6), infra.

 The balance of plaintiffs’ arguments are based on 5 U.S.C. Plaintiffs urge ■that we apply the protections of this title to their employment in the Canal .Zone. They recognize that they are covered by the Canal Zone Merit System *281 rather than, the U.S. Government Merit System, hut -would apply the provisions-of 2 C.Z.C. § 149 (c) (1) (1962) to obtain the same benefits.
Subsection 149(c)(1) provides that “(t]he Canal Zone Merit System shall * * * conform generally to policies, principles, and standards established by or-in accordance -with the [U.S. Government] Civil Service Act. * * *”
We need not decide whether plaintiffs are entitled to the benefits of 5 U.S.C. at this juncture. Even if title five applies to plaintiffs’ situation, plaintiffs are-unable to prevail on the merits of their discrimination arguments. Therefore, we do not decide the question at this time.

 Defendant argues that plaintiffs cannot maintain their discrimination-claims, either because they have failed to exhaust administrative remedies, Pettit v. United States, 203 Ct. Cl. 207, 488 F. 2d 1026 (1973), overruled on. other grounds, United States v. Testan, 424 U.S. 392 (1976), or because all questions concerning discrimination in Federal employment are matters exclusively within the jurisdiction of the district courts, Brown v. General Services Administration, 507 F.2d 1300, 1306-07 (2d Cir. 1974), cert. granted, 421 U.S. 987 (1975). Again, we need not decide such questions as plaintiffs fail to-prevail on the merits of the instant action.

 As evidence of the fact that the amendments do not discriminate between married maies and females, we note that the same regulations are currently ■■under attack in the district court by three male employees of the Panama Canal Co. Garcia v. Calloway, D.C.C. Civ. No. 74-779 (Filed May 22, 1974).

 The concurrence’s use of United States v. Testan, 424 U.S. 392 (1976) to deny the 5 U.S.C. claims, mistakes the thrust of plaintiffs’ position. We agree that if plaintiffs’ action attempts to recover based solely on the discrimination statutes plaintiffs fail to state a claim for money damages. In such case Testan would apply. However, there is an “insulating factor” in this action which was not present in Testan. Plaintiffs do not attempt to recover a money damage claim on their 5 U.S.C. arguments, but attempt by use of these statutes, to have the Secretary’s regulations declared invalid. Once the regulations are invalidated plaintiffs must be paid the full 25 percent tropical differential under the prior law and the Tucker Act. Testan simply does not apply in the case at bar.