Norman E. **ADAIR** et al.

v.

The **UNITED STATES.**

Nos. 541–76, 286–78, 461–78, 87–79C and 139–79C.

United States Court of Claims.

May 6, 1981.

Jeffrey M. Glosser, Washington, D. C., atty. of record, for plaintiff. Kaufmann, Glosser & Greenburg, P.C., Washington, D. C., of counsel.

Glenn E. Harris, New York City, with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

## ON PARTIES' EXCEPTIONS TO THE TRIAL JUDGE'S REPORT

KUNZIG, Judge.

In these five consolidated pay cases,[1] plaintiffs are some 220 Public Health Service (PHS) physicians who claim entitlement to so-called "variable incentive pay" (VIP) under 37 U.S.C. § 313 (1976). The Government, relying on *United States v. Testan (Testan)*[2] contends that we lack jurisdiction to entertain this suit because of plaintiffs' failure to show any substantive right to receive money presently due. Plaintiffs rejoin by labeling the Government's contention as a "rather extravagant reading of *Testan*." Arguing that the regulations which excluded them from receiving VIP are inconsistent with the intent of § 313, plaintiffs conclude that *Testan* "simply does not apply in the case at bar." We

---

1. These cases were jointly tried before Senior Trial Judge White, with his recommended decision and conclusion of law being submitted in accordance with Rule 134(h). With the approval of Senior T. J. White, the attorneys for the parties agreed that on the issue of the Government's liability, the trial of the five cases would be limited to the claims of three plaintiffs as representative of the three different groups of plaintiffs involved in the litiga-

tion. 1) Dr. Eric D. Caine represents the claims of the PHS/NIH Associates; 2) Dr. Richard B. Everson represents the claims of the COSTEP physicians (he also has a claim as a PHS/NIH Associate); and 3) Dr. Robert H. Breyer represents the claims of the CORD physicians.

2. 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

find plaintiffs' argument unpersuasive and hold for the Government.[3]

### I.

Plaintiffs, all highly trained medical specialists, voluntarily enrolled in certain of the following PHS programs: Senior Commissioned Officer Student Training and Extern Program (COSTEP); Commissioned Officer Residency Deferment Program (CORD); and PHS/NIH Associates Program (Associates). These programs were recruiting mechanisms which enabled PHS to obtain highly qualified physicians for certain government positions. As members of the COSTEP, CORD or Associates programs, plaintiffs received various benefits such as financial assistance in completing the fourth year of medical school (COSTEP), deferment from the Selective Service (CORD), and investigative and experimental research opportunities (Associates).[4]

In 1974, P.L. 93–274 was enacted into law,[5] amending title 37, United States Code, by adding § 313. Section 313 authorized the Secretaries of the Department of Defense (DOD) and Health, Education and Welfare (HEW)[6] to grant variable incentive pay, in limited circumstances, to both military and PHS physicians.[7] Section 313, as then pertinent, provided as follows:[8]

§ 313. Special pay: medical officers who execute active duty agreements.

(a) Under regulations prescribed by the Secretary of Defense or by the Secretary of Health, Education, and Welfare, as appropriate, and approved by the President, an officer of the Army or Navy in the Medical Corps, an officer of the Air Force who is designated as a medical officer, or a medical officer of the Public Health Service, who—

(1) is below the pay grade of 0–7;

(2) is designated as being qualified in a critical specialty by the Secretary concerned;

(3) is determined by a board composed of officers in the medical profession under criteria prescribed by the Secretary concerned to be qualified to enter into an active duty agreement for a specified number of years;

(4) is not serving an initial active duty obligation of four years or less or is not serving the first four years of an initial active duty obligation of more than four years;

(5) is not undergoing intern or initial residency training; and

(6) executes a written active duty agreement under which he will receive incentive pay for completing a specified number of years of continuous active duty subsequent to executing such an agreement;

may, upon acceptance of the written agreement by the Secretary concerned, or his designee, and in addition to any other pay or allowances to which he is entitled, be paid an amount not to exceed $13,500 for each year of the active duty agreement. * * *[9]

Pursuant to § 313, the Secretary of HEW promulgated regulations which defined an "initial active duty obligation of four years or less, or the first four years of an initial

---

**3.** Senior T. J. White recommended VIP recovery for the PHS/NIH Associates, but denied such recovery to both the COSTEP and CORD physicians.

**4.** In some instances, COSTEP and CORD physicians also occupied Associate positions. *See*, *e. g.*, n.1 *supra*, at 1.

**5.** § 1(4), 88 Stat. 95 (1974).

**6.** Now the Department of Education and the Department of Health and Human Services. *See* P.L. 96–88, 93 Stat. 677–681, 696 (codified at 20 U.S.C. §§ 3401, 3441–3447 (1976 & Supp. III 1979)).

**7.** The VIP bill, as originally proposed, only encompassed DOD physicians; however, it was later amended in conference to include PHS physicians. H.R.Conf.Rep.No.93–984, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 2923, 2924–5.

**8.** 37 U.S.C. § 313·was amended both in 1976 and 1979: P.L. 94–273, § 43, 90 Stat. 381 (1976); P.L. 96–107, Title VIII, § 804(b), 93 Stat. 812 (1979).

**9.** Note that the payment of variable incentive pay is supplementary in nature.

active duty obligation of more than four years" to include COSTEP and CORD physicians. 37 U.S.C. § 313(a)(4). As such, these physicians were precluded from receiving VIP. Similarly, these regulations were interpreted by the Secretary to render Associates ineligible for VIP.[10]

Plaintiffs, serving on active duty for varying lengths of time during the period subsequent to the enactment of § 313, claimed entitlement to VIP on the grounds that other PHS physicians performing duties of equal or lesser responsibility were receiving these benefits. Because of plaintiffs' membership in the COSTEP, CORD or Associates programs, they were denied VIP. Plaintiffs timely filed suit in this court seeking the award of VIP in the amount and for the period of time to be determined in accordance with the facts of each respective plaintiff.[11]

The Government essentially bases its argument on the *Testan* case and contends, *inter alia*, that § 313 is not a "money mandating" statute which would give this court jurisdiction to grant relief under a statute. 28 U.S.C. § 1491 (1976) (Tucker Act). The Government continues that even if this court assumes *arguendo* that the regulations denying plaintiffs VIP are inconsist-

ent with the statute, § 313 nevertheless lacks the "money mandating" element required by *Testan.*

Plaintiffs, on the other hand, attempt to counter the Government's *Testan* analysis by attacking the PHS regulations that exclude them from receiving VIP benefits. They argue that since such regulations are invalid, they are entitled to a money judgment. The *Testan* case, plaintiffs contend, therefore does not apply in the instant matter. Because we find plaintiffs' analysis inapposite to the matter before us, we hold for the Government.

## II.

Plaintiffs filed in this court under the Tucker Act, 28 U.S.C. § 1491 (1976), which provides in pertinent part:

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. * * *

(a) Unfulfilled active duty service obligation resulting from participation in a Senior Medical Student Program [COSTEP].

 \* \* \* \* \* \*

(d) An agreement entered into by an individual to serve after a period of deferment (CORD * * *).

(2) Period of time while a medical officer is participating in an intern or initial residency training program while on active duty [Associates].

 \* \* \* \* \* \*

On September 16, 1975, the VIP regulations were amended to include the following provision:

No medical officer(s) shall receive Variable Incentive Pay earlier than the date they would have become eligible for such pay if they had entered on active duty immediately after an initial active duty obligation was incurred, and they served on active duty continuously until completion of the obligatory service.

---

**10.** PHS regulations promulgated pursuant to § 313, became effective September 9, 1974. The regulations provided in pertinent part, as follows:

*Variable Incentive Pay for Commissioned Medical Officers*

 \* \* \* \* \* \*

C. *Definitions.*

1. As used in these regulations, the following definitions apply:

 \* \* \* \* \* \*

c. *Initial Active Duty Obligations.*

The first obligation to serve on active duty for a specified period of time imposed on medical officers by a law or imposed by a regulation issued by the Secretary of HEW. An obligation incurred as a result of the commissioning process shall not be construed as an initial active duty obligation.

 \* \* \* \* \* \*

e. *Disqualifying Active Duty Obligation.*

An obligation to enter or remain on active duty incurred as a result of:

(1) An initial active duty obligation of four years or less, or the first four years of an initial duty obligation of more than four years.

**11.** *See* n.3 *supra,* at 2.

It is the holding of the *Testan* case that the Tucker Act is purely jurisdictional and does not create any substantive rights against the United States for money damages—it merely confers jurisdiction on the Court of Claims whenever the substantive right exists. *Testan*, 424 U.S. at 396, 96 S.Ct. at 952. In the course of its opinion, the Supreme Court stated:

The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists. *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–607, 372 F.2d 1002, 1007–1009 (1967). We therefore must determine whether the two other federal statutes that are invoked by the respondents confer a substantive right to recover money damages from the United States for the period of their allegedly wrongful civil service classifications.

*Id.* at 398, 96 S.Ct. at 953.

The Court then went on to hold that the existence of a right to money damages in that case depended on whether the Classification Act ("equal pay for substantially equal work"),[12] could be "fairly interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 401, 96 S.Ct. at 954, citing *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1008–1009. The Court concluded that the Act nowhere "makes the United States liable for pay lost through allegedly improper classification." *Id.* at 399–400, 96 S.Ct. at 954.[13]

 It is implicit in the holding of *Testan* that a statute providing for solely discretionary payment of money does not give rise to a "right to recover money damages from the United States." *Id.* In our recent military Corrections Board case of *Skinner v. United States*, 219 Ct.Cl. 322, 594 F.2d 824 (1979), we were presented with a situation where the statute involved, 37 U.S.C. § 204 (1976), conferred on an officer the "right to pay of the rank he was appointed to up until he is properly separated from the service." If it was found that the officer was improperly separated, *e. g.*, defective OER(s) and passovers, then § 204 *absolutely* entitled him to back pay. Thus in *Skinner*, the statute provided for mandatory relief upon proof of the existence of certain conditions. We held that this was the jurisdictional prerequisite. Here, by contrast, neither § 313 nor the regulations promulgated thereunder provide for mandatory payment of money to physicians under the circumstances which allegedly exist. Section 313(b), the next section of the statute after the one quoted above, provides that, under regulations he may prescribe, the Secretary may at any time terminate any officer's entitlement to VIP. *Cf. German v. United States*, 225 Ct.Cl. ——, 633 F.2d 1369 (1980). If this can happen to one who has previously qualified and received a signed agreement, it is hardly consistent to suppose Congress ever intended any vested entitlement for one who has not satisfied all these prerequisites.[14]

 The facts show that under the provisions of § 313 Congress established a *discretionary mechanism* by which the Secretaries of DOD and HEW could offer pecuniary bonuses in recruiting physicians for various government positions. If the Secretaries, acting through boards composed of officers in the medical profession, determined that particular vacancies could be filled without

---

**12.** 5 U.S.C. § 5101 *et seq.* (1976).

**13.** As to the other federal statute that plaintiff invoked, 5 U.S.C. § 5596(b) (1976) (Back Pay Act), the Court held that it did not apply to wrongful classification claims.

**14.** Section 313(b) provides in pertinent part: Under regulations prescribed by the Secretary of Defense, the Secretary concerned, or

his designee, may terminate, at any time, an officer's entitlement to the special pay authorized by this section. In that event, the officer is entitled to be paid only for the fractional part of the period of active duty that he served, and he may be required to refund any amount he received in excess of that entitlement.

offering VIP, then it was not necessary to provide VIP as an incentive. 37 U.S.C. § 313(a)(3). "This authority would be used in varying amounts by the Defense Department [or PHS] as the need dictates and would be used only where necessary to meet shortages of critically needed health personnel." H.R.Rep.No.93–883, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 2923, 2926. If Congress had intended all DOD and PHS physicians to receive VIP benefits, it simply could have enacted an across-the-board base salary increase. Clearly Congress envisioned that physicians working side-by-side and performing essentially the same duties, would not necessarily receive the same salary— one might be eligible for VIP while the other was not.[15]

■ Even if we are to accept plaintiffs' contention that the regulations excluding COSTEP, CORD and Associate physicians from receiving VIP are invalid, it does not necessarily follow that plaintiffs would be entitled to VIP. Section 313 sets forth six eligibility requirements plus an overriding discretionary requirement that a written active duty agreement be *accepted by the Secretary.*[16] The Secretary, for example, could disappoint any physician's expectations of selection for VIP by determining that the group to which that physician belongs is not a "critical specialty". § 313(a)(2). Moreover, the statute expressly provides that the Secretary is to prescribe the criteria under which the selection

board is to operate. Given the Secretary's authority to prescribe these qualifications, as well as the selection board's discretion in implementing them, a physician's expectations for VIP could be frustrated at any time. *Id.* Furthermore, even if a physician is chosen to receive VIP, there is nothing in the statute obligating the Government to pay $13,500—some lesser amount, say $500.00, may be determined sufficient in a particular case.[17] Since § 313 is discretionary in nature, we cannot say with certainty that plaintiffs would have been selected to receive VIP in the absence of the contested regulations. Therefore, plaintiffs have not established the existence of any right to money damages flowing from the alleged violations. Jurisdiction is wanting. *See generally, Skinner v. United States, supra; Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979). *Accord Hendricks v. United States,* 210 Ct.Cl. 266, 283 n.16 (1976).

■ Plaintiffs further argue that the Government's use of *Testan* to deny them VIP mistakes the thrust of their position. They contend that they do not attempt to recover a money damage claim based on § 313, but attempt by use of § 313, to have the Secretary's regulations declared invalid. *Cf. Hendricks v. United States,* 210 Ct.Cl. at 283 n.16. Plaintiffs again have failed to recognize that there is nothing in the record to suggest that they necessarily would have been selected to receive VIP. In effect plaintiffs are requesting relief in the form of a declaratory judgment. As stated by

**15.** During the House Floor consideration of P.L. 93–274, the permissive, rather than mandatory, nature of the VIP program was repeatedly emphasized. Congressman Hebert, a major proponent of the bill, specifically addressed that very point:

> I want to say in one very emphatic manner that what we do today is not mandatory or compulsory. This bonus in this legislation is permissive. Not one dollar has to be spent [by DOD or PHS] for a bonus for any of these professions. The [DOD and PHS] in its own judgment can expend the fund.

On the same day, Congressman Hunt, another supporter of the bill, stressed the following:

> This is not a bill that says, "Now we shall pay this money." This is a bill that is permissive, and it says, "If the money is needed, if the incentive is needed, then the Depart-

> ment of Defense [or PHS] has the leeway to extend to them the added emoluments of money insofar as the bonus is concerned. . . ."

120 Cong.Rec. 9318, 9321 (1974).

**16.** The Government contends that plaintiffs' claim must also fail because the active duty agreements entered into by plaintiffs have not been duly accepted by the Secretary concerned or his designee. § 313(a)(6). *Reele v. United States,* 214 Ct.Cl. 739 (1977). We find it unnecessary to reach this particular question because we feel the purely discretionary nature of the monetary payments in this case creates a want of jurisdiction *ab initio.*

**17.** *See* n.9 *supra,* and accompanying text at 3.

the Supreme Court, "in the absence of an express grant of jurisdiction from Congress, the Court of Claims [does not have] the authority to issue declaratory judgments." *United States v. King*, 395 U.S. 1, 5, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1968).

### III.

█ In short, we hold *Testan* to be squarely applicable to the matter before us. Plaintiffs have failed to show any substantive right to receive presently due money damages by reason of the violation of the statute or regulations on which they base their claims.

Accordingly, after consideration of the submissions of the parties, with oral argument of counsel, defendant's motion for summary judgment is granted, and plaintiffs' cross-motion for summary judgment is denied. The petition is dismissed.