**James E. LIN**

v.

**The UNITED STATES.**

**No. 355–80C.**

United States Claims Court.

Aug. 19, 1983.

Stephen Daniel Keeffe, Washington, D.C., for plaintiff.

Lorraine B. Halloway, with whom were Asst. Atty. Gen. J. Paul McGrath and Glenn E. Harris, Washington, D.C., for defendant.

## OPINION

WOOD, Judge:

In this action, plaintiff, a former United States Naval Reserve officer, sues to recover $12,500, alleged to be due him under the terms of a "Variable Incentive Pay Contract (VIP)" providing in substance that, in exchange for an agreement to serve on active duty in the Navy Medical Corps for two years, defendant would pay him, in two equal annual installments, a total of $25,000 in variable incentive pay ("VIP"). Defendant denies that plaintiff is entitled to the amount claimed and, by way of counterclaim, asserts a right to recover from him a portion ($3,750) of the first installment payment pursuant to the said agreement.

Following defendant's receipt of plaintiff's sworn response to government interrogatories, defendant moved for summary judgment, asking that plaintiff's complaint be dismissed and that judgment be entered in defendant's favor on its counterclaim. Plaintiff has cross-moved for summary judgment. Briefing has been completed. The facts relevant to ruling on the motions are not in any real dispute. For the reasons hereinafter appearing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied.

### I

By Section 1(4), Act of May 6, 1974, Pub.L. 93–274, 88 Stat. 95, 37 U.S.C. § 313 (1976), Congress added to Title 37 of the Code a new section. *See Adair v. United States,* 227 Ct.Cl. 345, 648 F.2d 1318 (1981); *German v. United States,* 225 Ct.Cl. 1, 633 F.2d 1369 (1980). The reasons for enactment of Section 313 are there stated and need not be repeated here.

Section 313(a) provided in pertinent substance that, "Under regulations prescribed by the Secretary of Defense * * * and approved by the President * * *," an officer in the Medical Corps of the Navy satisfying certain specified criteria, including the execution of "a written active duty agreement under which he will receive incentive pay for completing a specified number of years of continuous active duty subsequent to executing such an agreement" might, "upon acceptance of the written agreement by the Secretary concerned, or his designee * * *," receive VIP in an amount not to exceed $13,500 for each year of the active duty agreement. 37 U.S.C. § 313(a) (1976).

Section 313(c), also relevant here, provided that an officer "who has received payment under this section," but "who voluntarily * * * fails to complete the total number of years of active duty specified in the written agreement shall be required to refund the amount received that exceeds his entitlement under those regulations." *Id.* § 313(c).

In Department of Defense (DOD) Directive No. 1340.11, September 12, 1974, implementing Section 313, the Secretary of Defense directed, among other things, that a medical officer with a two year service agreement who voluntarily terminated his agreement after completing one year of service under that agreement, but before completing his two years of service, was entitled to "35%" of "Total Agreement Sum," but "shall be required to refund the amount received that exceeds * * *" such entitlement.[1]

Pursuant to and in implementation of DOD Directive No. 1340.11, the Secretary of the Navy thereafter promulgated SEC-NAV INSTRUCTION 7220.75, December 6, 1974; insofar as here relevant that document essentially repeated the "refund" provisions of DOD Directive No. 1340.11 applicable to a medical officer who voluntarily failed to complete the total number of years

---

1. Defendant's counterclaim is derived by subtracting $8,750 (35 percent of $25,000, the "Total Agreement Sum") from $12,500 (the amount of VIP plaintiff received). Plaintiff does not contend either that DOD Directive No. 1340.11 should not be accorded the force and effect of law, *cf. Jackson v. United States,* 216 Ct.Cl. 25, 36, 573 F.2d 1189, 1194 (1978); *G.L. Christian & Associates v. United States,* 160 Ct.Cl. 58, 65, 320 F.2d 345, 350, *cert. denied,* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963), or that the government's calculation of its counterclaim contravenes that directive in any way.

of active duty specified in his VIP agreement.[2]

## II

On July 8, 1974, plaintiff entered upon active duty as a reserve officer in the Medical Corps, United States Navy. On September 20, 1974, the Chief, Bureau of Medicine and Surgery, tendered to plaintiff a "Variable Incentive Pay Contract (VIP)." The said document provided in pertinent part that, in exchange for plaintiff's agreement in writing to serve on active duty for a period of two years, commencing with the effective date of his entitlement to VIP, he would be entitled to VIP totalling $25,000 to be paid in two equal annual installments of $12,500 each.[3]

The VIP agreement defined the effective date of plaintiff's entitlement to VIP as the date of his acceptance of the VIP agreement. Plaintiff executed the VIP agreement December 27, 1974. The effective date of his entitlement to VIP was thus fixed as December 27, 1974, and the completion date of his agreed two year period of service on active duty in the Navy Medical Corps was thus fixed as December 26, 1976. Plaintiff received the first installment of $12,500 due under the VIP agreement in December 1974. The second, final, installment mentioned in that agreement has not, however, been paid to him.

By letter, dated December 3, 1975, plaintiff advised the Bureau of Medicine and Surgery that he would return to civilian life in July 1976 to resume residency training at a civilian institution. By letter, dated February 20, 1976, to the Chief of Naval Personnel, plaintiff stated that he had been accepted in a residency program to commence "on July 1976" at a civilian institution, and requested that he be released from active duty at the expiration of his active duty obligation. Plaintiff was duly released from active duty, at his own request, effective June 14, 1976.[4]

## III

Plaintiff obviously did not perform two years' service on active duty in the Navy Medical Corps following December 27, 1974, the effective date of his VIP agreement. Plaintiff contends, however, that he is nonetheless entitled to judgment (and, concomitantly, that defendant is not entitled to recover on its counterclaim) because, in plaintiff's words, "he performed all the terms and conditions of the Variable Incentive Pay contract, more particularly he served two years active duty." None of the arguments advanced in support of that contention has any merit whatever.

In the first place, plaintiff did not serve "continuously [on active duty] for a two year period." His service on active duty was, admittedly, only from July 8, 1974, "up to and including June 14, 1976 with 34.5 days accrued leave paid * * *." The days of accrued leave for which plaintiff was paid upon his release from active duty cannot be "considered as service for any purpose." 37 U.S.C. § 501(c) (1976). Thus, plaintiff in fact did *not* serve on active duty for a two year period, and, for this reason alone, is not entitled to recover in this action.[5]

It is accordingly unnecessary to explore in any detail either broad allegations, in plaintiff's complaint and on brief, concern-

2. SECNAV INSTRUCTION 7220.75 also tracked an interim Secretarial directive effective September 18, 1974, with respect to the "refund" provisions applicable to medical officers entitled to VIP who did not complete all of their agreed service.

3. Parenthetically, the VIP agreement explicitly advised plaintiff that should he fail to serve on active duty as a medical officer "for the full period under this agreement," refund of the amount of VIP "prescribed in current Secretary of the Navy instruction * * *" would be required.

4. Upon release from active duty, plaintiff had a total of 34.5 days' accrued leave. The record reflects that he was paid for this accrued leave.

5. Even should plaintiff's written agreement to serve on active duty for two years be construed (contrary to its express terms) as covering service commencing July 8, 1974, and extending to July 7, 1976, this result would still follow.

ing "representations" allegedly made to him at the time of his recruitment respecting the matter of VIP,[6] or the asserted failure, due to "unexcusable neglect" by Navy officials, "to timely provide plaintiff with a V.I.P. contract." These aspects of plaintiff's argument do, however, merit brief comment.

Plaintiff's allegations concerning "representations," fairly read, are at best so vague as to be meaningless. There is no indication as to where, when, or by whom the alleged "representations" were made, nor even a clear statement as to what was "represented" to plaintiff. More significantly, however, there is no suggestion whatever that the alleged "representations" were made by anyone having authority to make them. And, from even a cursory glance at the stringent statutory prerequisites to the exercise by the Secretary of his discretionary power to grant VIP,[7] it is crystal clear that such an allegation, if made, would be wholly unfounded.

■ One who purports to contract with the United States assumes the risk that the official with whom he deals is clothed with actual authority to enter into the agreement, or to make the representations alleged. It is, moreover, as settled that defendant is neither estopped to deny the authority of its agents nor bound by the actions of government officials beyond their actual authority and contrary to statute or regulation. *Jackson v. United States, su-*

pra, 216 Ct.Cl. 25, 41–42, 573 F.2d 1189, 1197–98 (1978), and cases there cited.

In this case, there is no allegation, nor basis for concluding, that "the recruiter had actual authority to make the alleged oral promises or representations, if he did in fact make them," *Jackson v. United States, supra,* and every reason to conclude otherwise. *Adair v. United States, supra; German v. United States, supra; Pardo v. United States,* 227 Ct.Cl. 377, 383–84, 648 F.2d 1330, 1334 (1981) (concurring opinion). The contention that, because of recruiter representations, plaintiff's active duty pursuant to his VIP agreement should somehow be deemed to have commenced July 8, 1974, is wholly untenable.

Plaintiff's assertions of "unexcusable [government] neglect * * * in failing to timely provide plaintiff with a V.I.P. contract," and that defendant "unexcusably neglected to formalize by a writing the contract entered into on July 8, 1974," have no more merit. They are patently inconsistent in their implications with the terms and conditions prescribed by Congress in enacting section 313,[8] and are, therefore, rejected.[9]

## IV

In light of the foregoing, plaintiff is not entitled to the sum he here claims. Plaintiff's cross-motion for summary judgment is accordingly denied. The complaint will be dismissed pursuant to Rule 58. Defendant's motion for summary judgment is granted,

---

6. Specifically, plaintiff's complaint refers to "representations" that he would be offered a VIP agreement "at the time of his entry onto active duty," and his brief refers to "representations" that he would be "eligible and qualified to receive V.I.P. bonus when he commenced his active duty." In response to interrogatories designed to discover the identity of the person or persons who allegedly made such "representations" to plaintiff, the substance of any such oral "representation," and whether any such "representation" was made in writing, plaintiff's sworn answer was "Not recalled." In this circumstance, neither the allegation in the complaint nor the contention on brief deserves any credence. *See Pacific Far East Line, Inc. v. United States,* 206 Ct.Cl. 378,

385, 513 F.2d 1355, 1359 (1976); *Garcia v. United States,* 123 Ct.Cl. 722, 733 (1952).

7. *See Adair v. United States,* 227 Ct.Cl. 345, 347, 648 F.2d 1318, 1320 (1981).

8. Among others, the broad discretion conferred upon the Secretary by Section 313, and the statutory requirement that entitlement to VIP requires completion of the agreed period of "continuous active duty *subsequent* to executing" the VIP agreement (emphasis supplied).

9. *Cf. Krigel v. United States,* 229 Ct.Cl. ——, 662 F.2d 741, 746 (1981). Whether such a claim is one upon which this court could grant relief need not be resolved here.

and judgment for $3,750 will be entered in defendant's favor on its counterclaim.