**Lt. Col. Jorge M. PARDO**

v.

**The UNITED STATES.**

No. 259–79C.

United States Court of Claims.

May 6, 1981.

Michael J. Gaffney, Washington, D. C., atty. of record, for plaintiff. Gaffney, An-

spach, Schember, Klimasti & Marks, P. C., Washington, D. C., of counsel.

Virginia I. Bradley, Washington, D. C., with whom was Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and NICHOLS and KUNZIG, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge.

This military pay case comes before the court on the parties' cross-motions for summary judgment. By this action, plaintiff seeks an award of Variable Incentive Pay (VIP) for the period September 12, 1974 to June 30, 1975. Plaintiff contends that he was improperly denied VIP upon the basis of an allegedly defective Officer Efficiency Report (OER) covering his service from June 11, 1973 to April 9, 1974. The Government responds that we lack jurisdiction herein because plaintiff cannot establish a clear-cut monetary entitlement. We agree with the Government's view.

Plaintiff entered active duty as a Major in the Army Medical Corps on January 6, 1969. Following brief initial training, he served one year in Korea as a general surgeon. He was then transferred to Fort Eustis, Virginia, where he worked as a general surgeon and, later, Chief of General Surgical Services. He remained at Fort Eustis until August 1972, when he reported to the 56th General Hospital in Germany to assume the duties of Chief of Professional Services and Chief of Surgery.

Pardo's OER's for his service in Korea and Virginia were generally favorable. Pardo's rating and indorsing officers consistently placed him among the top 10–20 percent in comparison to his peers and his skills as a surgeon received a number of flattering comments. The only blemish was some negative comment directed at Pardo's apparent shortcomings in getting along with others and handling administrative responsibilities.[1] This factor would soon grow markedly in importance, as will be seen.

LTC Pardo's subsequent job performance during his first year in Germany was only mediocre. For the period August 1, 1972 to June 10, 1973, he was given an OER containing a numerical rating of 145/200, just slightly above average. The written comments were distinctly critical. The rating officer, COL. James B. Lindahl, stated: "[Pardo's] abrupt manner and reluctance to give and take in dealing with subordinate members of the professional staff caused occasional misunderstanding and resentment." The indorsing officer, COL. John H. Sharp, concurred, as follows: "A reportedly exceptionally skillful surgical technician who has consistently achieved good results in a limited scope of general surgical practice. LTC Pardo's effectiveness as Chief, Professional Services, in achieving

---

1. The indorser of Pardo's first OER in Korea (covering the period Feb. 7, 1969 to June 17, 1969), LTC J. A. Morris, stated: "Dr. Pardo has a slight communication problem (ethnic Philippino) which detracts from his overall effectiveness...." The indorser of Pardo's first OER at Fort Eustis (for the period Feb. 13, 1970 to August 16, 1970), COL. Henry Essex, indicated that Pardo "occasionally acts prematurely." In the OER for the period November 28, 1970 to August 29, 1971, the rater, LTC Pedro I. Gonzales, said: "[Pardo's] performance is only barred by his emotional approach to the problems." The indorser, COL. Essex, commented: "In the administration of his service [Pardo] is developing into an effective chief but is still impressed more by the title than the responsibilities related thereto." Finally, the rater on Pardo's final OER at Fort Eustis (for the period August 30, 1971 to July 27, 1972), LTC James K. Aton, made the following pertinent comment:

> LTC Pardo has been a fair Medical Corps Officer. His output of work, acceptance of responsibility, both professional and administrative have met minimal requirements. He does have some difficulty in getting along with a number of his colleagues, but there may be misunderstandings because of cultural background with resultant communication problems. LTC Pardo is a technically fair surgeon who does possess a moderately good rapport with his patients. If he learns to accept constructive criticism, he may possess ability for continued advancement with his contemporaries.

LTC Aton also rated Pardo near the bottom in his ability to "command [...] confidence and respect."

the cooperation and desired performance of the professional staff, has been patently limited by his difficulty in communication and apparently relatively aloof, distant relationship to the physician staff of his hospital." Among other things, Pardo had apparently been averse to paperwork during this period and had fallen into a situation where his commander, COL. Lindahl, assumed many of those tasks for him.

In June 1973, COL. L. V. D. Harris assumed command of the 56th General Hospital and became LTC Pardo's new rater for OER's. Differences shortly developed between the two officers. This led to a written request by Pardo, submitted to the Army on January 11, 1974, for release from the authority of COL. Harris and for a change of rater. Pardo made a number of allegations, but especially complained of being overworked[2] and of prejudice on the part of COL. Harris.[3] The request, which cited no authority for the proposed action, was quickly turned down by a senior Army officer, with the suggestion that Pardo try to resolve the matter on a personal basis.

The differences between the two medical officers, however, were not resolved. Subsequently, on April 8, 1974, Pardo filed with Harris a formal complaint against the latter for redress of grievances under Article 138 of the Uniform Code of Military Justice.[4] The complaint essentially restated the charges which Pardo had earlier made in his request for release from the authority of COL. Harris. Harris thereafter submitted the complaint to the proper deciding official, along with his own point-by-point rebuttal. On June 10, 1974, the complaint was rejected *in toto*.

On April 9, 1974—one day after Pardo submitted his complaint—COL. Harris prepared an extremely critical OER for Pardo's service during the period June 11, 1973—April 9, 1974. The overall numerical rating, resulting from Harris' evaluation together with that of the indorsing officer, GEN. Philip A. Deffer, was 15/200—marginal. The written comments of both officers were severe, dwelling on Pardo's administrative failings, emotionalism, and self-centered behavior.[5] The only saving grace was Def-

2. In the request, Pardo wrote: "Colonel Harris expects me to work four times harder than the rest of the staff which I believe is not fair and unreasonable." The letter continued: "Since I took over 1½ years ago as Chief, Professional Services, I usually leave late in the evening because of paper work to be done which I do not mind. However, since Colonel Harris took over the command, he expects me to do all the work and it is alright with him if my subordinates and other members of the staff does [sic] not because he keeps on telling me that I am a Chief and not an indian [sic]."

3. Pardo stated: "I believe that there is an element of prejudice against me by my present commander by giving me such a hard time."

4. Article 138, UCMJ (10 U.S.C. § 938 (1976)) states:
Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possi-

ble, send to the Secretary concerned a true statement of that complaint with the proceedings had thereon.

5. COL. Harris made the following written comment:
Pardo abused his discretion of authority by taking excess absence without compensating the other surgeon.... Except at the rater's *specific direction* he would not even make ward rounds with his colleague. He consistently put his desires ahead of those of his colleagues with regard to surgical call & absence planning. LTC Pardo is emotionally unstable. He has fought bitterly with the entire staff & exhibited bizarre behavior with increasing frequency in the last few months. He has refused psychiatric counseling. He should not be considered for positions of any responsibility. With effective psychotherapy his overall effectiveness might be restored. However, at this time I consider his value to the service to be severely limited at his present rank and do not recommend he be considered for promotion until marked improvement is demonstrated.
GEN. Deffer expressed himself similarly:
LTC Pardo has been completely ineffective in his present position. He has not been able to establish an appropriate professional or command relationship between himself, his subordinates and superiors. Despite counselling

fer's remark that, "[Pardo] is a good general surgeon and should be assigned as such at the earliest possible time." For the balance of his military career, Pardo would be dogged by this inconsistency: good surgeon, poor administrator.

On May 6, 1974, Congress enacted the Variable Incentive Pay (VIP) statute, 37 U.S.C. § 313 (1976), to provide increased monetary incentives of up to $13,500 per year to enhance recruitment and retention of physicians into the Armed Forces. On July 8, 1974, an Army Selection Board appointed by the Surgeon General convened for the first time to consider Medical Corps officers who would be recommended for approval for VIP for the following year. Of the 490 officers considered, LTC Pardo was one of eight not selected.

Just before LTC Pardo transferred to a new hospital, COL. Harris signed another adverse OER for the period April 10, 1974 to July 10, 1974.

In November 1974, plaintiff initiated appeals of the two adverse OER's. In April 1975, he was advised that a Special Review Board had declined to remove the two OER's from his file. In September 1975, Pardo wrote the Secretary of Defense, but obtained no relief.

In April 1976, plaintiff appealed to the Army Board for Correction of Military Records (ABCMR). The second adverse OER for the period April 10, 1974 to July 10, 1974 was removed from plaintiff's file for the stated ground that the rater had had an insufficient period of observation to render a report. ABCMR, however, refused to void the first OER for the period June 11, 1973—April 9, 1974, stating that there was insufficient evidence presented to warrant its removal. Pardo was notified of this decision on February 17, 1977. He filed in this court on June 15, 1979. Pardo retired from the military on July 27, 1979, shortly after having been convicted by a court-martial of the offense of failing to obey a lawful order.[6]

Plaintiff, pursuant to Rule 101(a) of the Rules of this court, now seeks a decision granting him summary judgment on the issue of liability with respect to (1) the decision of ABCMR not to remove from his records the OER for the period June 11, 1973 to April 9, 1974, and (2) the Army's decision denying him VIP in 1974–1975. Plaintiff alleges that the denial of VIP stemmed from the presence of the challenged OER in his file.

In its cross-motion, the Government invokes *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), in arguing that this court is without jurisdiction. The core of the argument is that the award of VIP falls within the discretion of the military. According to the Government, there is no legal guaranty or practical assurance that the Army Selection Board would have awarded LTC Pardo VIP for 1974–75 had the allegedly defective OER for the period June 11, 1973 to April 9, 1974 not been brought to its attention. Consequently, no monetary entitlement had been shown and we are without jurisdiction.

This line of reasoning has already received our approval in *Adair v. United States*, Ct.Cl., 648 F.2d 1318 (1981), another VIP case decided this date. *Adair* is controlling in this instance. The Government's motion is well-founded.

Accordingly, after consideration of the submissions of the parties, with oral argument of counsel, plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Plaintiff's petition is dismissed.

FRIEDMAN, Chief Judge, concurring:

Although I agree with the result the majority reaches, I cannot agree that *Adair* is controlling. The question whether we have jurisdiction over this claim under *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), is a difficult one. Since I conclude that the plaintiff has not

---

from this HQ, there has been no change in his attitude or performance.

**6.** Pardo had effected an interservice transfer to the Air Force in 1978.

demonstrated that the Army Board for the Correction of Military Records acted arbitrarily or capriciously in refusing to remove the unfavorable OER from his file, I would pretermit the jurisdictional issue and hold for the defendant on the merits.

The determination whether a medical officer is entitled to VIP is a three-step process. 37 U.S.C. § 313 (1976); Department of Defense Directive 1340.11 (September 12, 1974).

The first step is to determine whether, by statute or regulation, a medical officer is barred from receiving VIP. Specifically, the medical officer must be (1) "below the pay grade of 0–7;" (2) "not serving an initial active duty obligation of four years or less or . . . not serving the first four years of an initial active duty obligation of more than four years;" and (3) "not undergoing intern or initial residency training." 37 U.S.C. § 313(a)(1), (4), and (5). *See also* DOD Directive 1340.11.III.B and .C. It was at this step that the medical officers in *Adair* were found not entitled to VIP. Under regulations of the Secretary of HEW, the officers in the three categories there involved had a disqualifying active duty obligation under section 313(a)(4). *Adair* determined only that we are without jurisdiction to decide whether plaintiffs as a group were improperly classified as subject to a disqualifying active duty obligation.

The second step is determining if an officer is "designated as being qualified in a critical specialty." 37 U.S.C. § 313(a)(2), DOD Directive 1340.11.III.A. A critical specialty is one "in which the supply of qualified personnel is, or is projected to be, inadequate to meet military service requirements as designed by the Secretary." DOD Directive 1340.11.II.B.

The third step involves evaluating the individual officers who have been determined to be "eligible for variable incentive pay." DOD Directive 1340.11.III.E. Officers are then placed in one of the two following categories:

1. An officer qualified in a designated critical specialty whose professional qualifications or demonstrated performance, in relation to his Military Department's need for such officers, indicates that a premium should be placed on his procurement or retention in the active service.

2. An officer qualified in a designated critical specialty whose professional qualifications or demonstrated performance indicates that no premium should be placed on his procurement or continued active service.

Plaintiff was denied VIP at this third step. The Board that evaluated plaintiff and 489 other medical officers examined only persons qualified in a designated critical specialty. Its only task was to determine whether each officer

through training and experience, has acquired sufficient professional knowledge and skill in a particular field of medicine such as would enable him to accomplish the professional tasks associated with the majority of the positions in that field of medicine which are appropriate to his grade. In its deliberations the board should not overlook the nominee's potential as an Army officer, and in that respect should review his military, moral and ethical conduct. The weight to be given derogatory information must be determine [sic] by the collective judgment of the board.

Letter of Instruction for the Army Selection Board Considering Medical Corps Officers for Variable Incentive Pay (undated). Of the 490 officers considered, only eight, including the plaintiff, were denied VIP. No reasons were given for the rejection of any of these officers.

*Adair* involved the denial of VIP to a class of medical officers who, under the statute and regulations, were determined not entitled to VIP. The allegation by those officers that the denial of VIP was improper did not state a claim within our jurisdiction because even if the statute or regulations were invalid on their face or as applied, the plaintiffs still would not be entitled to VIP since the Secretary never had considered, let alone approved, any of the plaintiffs' entitlement to VIP on an individual basis.

In the present case, in contrast, Pardo contends that the Secretary abused his discretion in denying Pardo individually—and not as a member of a class of officers—VIP. I am not prepared to say that, in such a situation, we have no jurisdiction to consider the claim. For example, suppose that the VIP Board had informed Pardo that although the Board considered him otherwise fully qualified for and would have awarded him VIP, it was denying him VIP solely because of his Philippine ancestry. It is difficult to believe that in such circumstances we would not have jurisdiction to award Pardo the VIP that he would have received had it not been for the Board's reliance upon this illegal factor.

I concur in the court's judgment, however, because I cannot conclude that the Corrections Board committed reversible error in refusing to remove the adverse OER from Pardo's file. Pardo has not demonstrated that his low rating resulted from and was given in retaliation for his complaints about and disagreements and conflicts with his commanding officer and rater, Colonel Harris. Pardo's earlier OER's had contained substantial critical comments about him (although not about his surgical skills), and I am not convinced that Colonel Harris' rating necessarily was attributable to anything other than his judgment regarding Pardo's performance. Moreover, the indorsing officer on the unfavorable OER, General Deffer, was no less critical of Pardo's performance.

Since Pardo's claim for VIP necessarily fails unless he can establish that the VIP Board improperly considered his unfavorable OER, and since he has not so established, I would dismiss the petition on the merits.