**Nick W. URAGA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 286–83C.

United States Claims Court.

Dec. 20, 1983.

---

Billy F. Brown, Biloxi, Miss., for plaintiff.

Kathleen A. Flynn, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

### MEMORANDUM AND ORDER

MAYER, Judge.

Plaintiff Uraga, a former physician and officer in the Air Force, brought this suit to obtain physicians variable incentive pay (VIP) he claims was improperly denied him because of a violation of Air Force regulations. Defendant has moved for summary judgment because this court does not have jurisdiction over the claim.

### FACTS

Plaintiff began his career in the Air Force by attending medical school as a second lieutenant under the United States Air Force Medical Education Program, by which he received military pay and allowances, tuition, and fees. He was promoted to first lieutenant and captain while in school.

When he graduated from medical school in 1973, he was assigned to the Air Force Medical Center at Scott Air Force Base, Illinois, for his first internship. The performance evaluation he received during this assignment was unfavorable and recommended against his advancement to residency training. After the internship, plaintiff took a course in aerospace medicine at Brooks Air Force Base, Texas, and became a flight surgeon. He was assigned as a flight surgeon to Athenai Air Base, Greece, where he was given a letter of reprimand for failure to comply with appearance requirements. He also received an unfavorable officer efficiency rating (OER) in which the rating officer recommended against his retention in that assignment.

Plaintiff was reassigned as a flight surgeon to McChord Air Force Base, Washington. The official assignment was to the 318th Fighter Interceptor Squadron, but plaintiff's principal place of duty was at the McChord Base Medical Clinic. Although he was assigned for administrative purposes to, and his commander for reporting purposes was the commander of, the 318th, his medical duties were supervised by the clinic commander. His first two OER's in this assignment were favorable. But in the fall of 1978, the commander of the 318th Fighter Interceptor Squadron gave him a letter of reprimand for disobedience of an order, insubordination, and disrespect.

By this time, plaintiff had served approximately five years of the nine year active duty obligation he incurred because of his government-sponsored medical education and training. Nevertheless, he attempted to resign, stating that his retention in the service would likely cause a "deterioration and worsening of my attitude and behavior." His resignation was denied.*

During 1979, plaintiff received a series of reprimands for refusing to provide medical care, failing to promptly and professionally perform his duty as part of a team to advise the next of kin of an active duty casualty, rudeness to a patient, and other infractions. In June of that year, the base clinic commander recommended that plaintiff's VIP be terminated because the Air Force should not place a premium on his service. The basis for this action was his poor performance of non-medical responsibilities. His medical abilities were not questioned and the record indicates he was generally thought a proficient doctor. After considering his record, the Air Force Surgeon General's VIP selection board recommended that plaintiff not receive VIP and the Surgeon General approved the recommendation. The following year, his award of VIP was again considered by a supplemental Surgeon General VIP board and again denied.

The record shows that plaintiff invariably contested the adverse actions he received over the years. He went so far as to initiate an investigation by the Inspector Gener-

---

* Plaintiff also unsuccessfully petitioned for a writ of habeas corpus in district court. *Uraga v. Stetson,* No. C79–147T (W.D.Wash. July 3, 1979).

al of the Air Force and attempted to file a complaint under Article 138 of the Uniform Code of Military Justice, 10 U.S.C. § 938, against the clinic commander. But his counteractions were not sustained. Finally, plaintiff applied to the Air Force Board for the Correction of Military Records requesting removal of the last two adverse OER's from his files and the award of VIP for 1980. The Board denied the application and, in March of 1983, he was given an honorable discharge after having been passed over for promotions and involuntarily released from the service.

### DISCUSSION

By a statute then in effect, 37 U.S.C. § 313 (1980 Supp.) (repealed 1980), Congress authorized the Secretary of Defense to award variable incentive pay to enhance recruitment and retention of critically needed health professionals in specialties where shortages existed, and permitted the Secretary to establish a discretionary mechanism by which selection of officers to receive the pay might be made. The exercise of this authority resulted in Department of Defense Directive No. 1340.11 (Sept. 12, 1974), which provided in pertinent part:

> The Secretary of the Military Department, or his designee, may terminate a medical officer's entitlement to variable incentive pay, at any time, upon a determination by a board composed of medical officers that the officer's performance has deteriorated to a level at which no premium should be placed on his continued service....

This delegated discretionary authority to the Secretary of the Air Force was spelled out in AFR 36–4, ¶ 5c (Sept. 10, 1976), which says,

> The Secretary of the Air Force or his designee may terminate a medical officer's entitlement to VIP at any time on a determination by a board composed of officer's of his or her profession that the officer's performance has deteriorated to a level at which no premium should be placed on the officer's continued service....

The regulation also set up a VIP selection board to consider officers for award of this special pay and make appropriate recommendations to the Air Force Surgeon General.

Among the many pre-conditions to award is that the potential recipients "[a]re approved by their immediate commanders." AFR 36–4, ¶ 3f. In plaintiff's view, because the commander of the clinic under whom he performed his medical duties said that no premium should be placed on his continued service, see AFR 36–4, ¶ 5c, and recommended that he not get VIP, rather than his "actual" commander at the 318th Fighter Interceptor Squadron, this provision was violated. The parties do not explain the meaning of "immediate commander" in the regulation, but neither the VIP board nor the Board for the Correction of Military Records indicated there was anything amiss in the recommendation from the clinic commander. Indeed, this reporting procedure appears logical because the clinic commander was in a position better to evaluate plaintiff's performance day to day than was the commander of the 318th who would have had to rely on reports from the clinic in formulating a recommendation.

Be that as it may, this court is foreclosed from considering the matter further because, applying *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), and its own decision in *Adair v. United States,* 227 Ct.Cl. 345, 648 F.2d 1318 (1981), the Court of Claims in *Pardo v. United States,* 227 Ct.Cl. 377, 648 F.2d 1330 (1981), held in circumstances remarkably similar to these that the court has no jurisdiction. There, as here, plaintiff challenged adverse OER's which he alleged resulted in denial of VIP by the selection board. In both cases, the adverse OER's reflected the officers' inattention to the non-medical aspects of their responsibilities as military officers and not their performance as doctors. The board is instructed to evaluate one's potential as an officer and to review military conduct as well as medical ability. But the court said in *Pardo* that even if the remaining allegedly defective OER had not been

before the board, "there is no legal guarantee or practical assurance that the ... selection board would have awarded [him] VIP ...." 227 Ct.Cl. at 382, 648 F.2d at 1333. Because the award of VIP was entirely discretionary, 37 U.S.C. § 313 did not create a substantive right mandating the payment of money by the government, the *sine qua non* of this court's jurisdiction under 28 U.S.C. § 1491. *See United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954; *Adair v. United States,* 227 Ct.Cl. at 350, 648 F.2d at 1322.

The same considerations apply here, especially in light of the rest of plaintiff's record which he did not challenge before the Correction Board. *Cf. Pardo v. United States,* 227 Ct.Cl. at 385, 648 F.2d at 1335 (Friedman, J., concurring). The basis for his complaint about the OER's was that the commander of the 318th who rated him relied at least in part on the views of the clinic commander. But there is no reason why a rating officer who is not the closest supervisor cannot consider reports and records submitted by one who directly observed the performance of the rated officer when formulating an evaluation. Nor is it likely that the "actual" commander, who plaintiff says should have made the recommendation about VIP, would have been any more favorable than the clinic commander in light of his contemporaneous adverse evaluations of plaintiff on the OER's.

### CONCLUSION

Accordingly, defendant's motion for summary judgment is granted, the complaint to be dismissed with costs to the prevailing party. *See* 28 U.S.C. § 2412(a); RUSCC 54(d).

It is so ORDERED.