Gregory T. RICE

v.

The UNITED STATES.

No. 92–784C.

United States Court of Federal Claims.

May 3, 1994.

Chuck R. Pardue, Augusta, GA, atty. of record, for plaintiff.

Jeffrey R. Davis, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

## OPINION

YOCK, Judge.

This military pay case is before the Court on the defendant's Motion to Dismiss or in the Alternative for Summary Judgment. The plaintiff has countered with a Cross–Motion for Summary Judgment, filed May 24, 1993. At issue is a determination by the Secretary of the Air Force, entered pursuant to the recommendation of the Physical Disability Appeals Board ("PDAB"), finding the plaintiff fit for duty, and retaining him in the Air Force in active status. In his complaint, filed while still an active reservist, the plaintiff asks this Court to find the Secretary's determination arbitrary and capricious, order that the plaintiff be medically discharged from the service, and order that he be granted disability pay retroactively to the date of his disability. In the alternative, the plaintiff asks that this Court remand his case to the appropriate administrative body for further proceedings.

The Government argues that this Court does not have jurisdiction to require the plaintiff's retirement once the Secretary has found him fit for duty. The defendant argues in the alternative that even if this Court finds that it has such jurisdiction, there is substantial evidence supporting the Secretary's finding and that this Court should dismiss the plaintiff's complaint as a matter of law.

After a full and careful review of the pleadings, briefs and submissions filed by the parties, and after being fully advised of the parties' respective positions in an oral hearing held on November 16, 1993, the Court concludes that it does not have jurisdiction over the subject matter of the plaintiff's complaint. For the reasons set forth below, the defendant's Motion to Dismiss is granted pursuant to RCFC 12(b)(1). Accordingly, the plaintiff's cross-motion is denied.

### Facts

The plaintiff, Gregory Thomas Rice, served as a pilot in the North Carolina Air National Guard ("NCANG"). In July, 1991, while the plaintiff was deployed on annual training with his Guard unit in Cheyenne, Wyoming, he was involved in a hit-and-run automobile accident. The accident left the plaintiff with a fractured left elbow, requiring the use of two screws to surgically reattach the fractured fragments. After his surgery, the plaintiff underwent physical therapy, which was only partially successful. The plaintiff elected not to undergo further surgery because of the uncertain benefit it would have for his condition.

On May 6, 1992, a Medical Evaluation Board ("MEB")[1] convened at Shaw Air

---

1. The NCANG, like all components of the United States Air National Guard, is a reserve component of the United States Air Force. AFR 35–7, Attachment 4, (Sept. 15, 1981); *Gant v. United States*, 18 Cl.Ct. 442, 443 n. 2 (1989), *rev'd on other grounds*, 918 F.2d 168 (Fed.Cir.1990). As

Force Base, North Carolina, to evaluate the plaintiff for disability benefits in accordance with Air Force Regulation 35–4. The MEB diagnosed the plaintiff as having a "malunion versus nonunion lateral condyle, left elbow, with permanently decreased range of motion." Compl. at ¶ 6. Although the MEB recommended that the plaintiff be returned to duty, it noted that his ability to serve on "world-wide" duty was questionable. *Id.* The MEB further noted that "whether or not [Major Rice] could return to flying could be addressed after return to duty." Admin.Rec. at 85. The MEB's recommendations were approved by the facility commander on May 11, 1992. On June 5, 1992, the Air Force Military Personnel Center decided, after having reviewed the MEB's findings, to refer the plaintiff's case to an Informal Physical Evaluation Board ("IPEB")[2] because of the plaintiff's inability to perform world-wide duty. The IPEB concluded that the plaintiff could not satisfactorily perform his duties and recommended that the plaintiff be awarded a 30 percent disability rating and placed on the

Temporary Disability Retirement List ("TDRL")[3].

Although the plaintiff formally agreed with the recommendations and findings of the IPEB, on July 29, 1992, the Air Force Personnel Board ("AFPB")[4] rejected the IPEB's determination that the plaintiff was not fit for duty. The AFPB revised the IPEB's determination to reflect that the plaintiff was, in fact, fit for duty. The plaintiff disagreed with the findings and recommendations of the AFPB and requested a formal hearing with the Formal Physical Evaluation Board ("FPEB").[5] On August 27, 1992, the FPEB reached the same conclusion as the IPEB. The Board noted that the plaintiff was not fit for duty and observed that his condition was not likely to improve without additional surgery and physical therapy. The FPEB recommended that the plaintiff be placed on the TDRL with a 30 percent disability rating.

On September 14, 1992, the Physical Disability Appeals Board ("PDAB")[6] considered and affirmed the earlier AFPB determination

---

such, Air Force regulations concerning medical evaluations are binding on state Air National Guard units. The MEB is composed of three physicians who review all medical records and make appropriate recommendations as to disability disposition. Air Force Regulation 35–4, ¶ 1–3(b) (1989) (hereinafter "AFR 35–4"). The recommendation of the MEB is approved or disapproved by the medical facility commander. *Id.* The MEB may refer the case to a Physical Evaluation Board ("PEB") for further proceedings. *Id.*

2. "The informal board reviews all the medical records and pertinent documentation and decides if the member is physically and mentally fit or unfit for further military duty. The member may not appear before the informal board and is not represented by legal counsel." AFR 35–4, ¶ 1–3(e) (1989).

3. A member is placed on the TDRL when the PEB determines that a disability may be permanent and the member is otherwise qualified for disability retirement. The TDRL provides a means to further observe disabled members where it is uncertain whether the disability is permanent or temporary. The TDRL allows for an accurate assessment of the member's disability before a final disposition is made. AFR 35–4, 3–46 (1989). When a member is placed on the TDRL, the PEB is required by statute to reexamine him at least every 18 months to determine whether there has been a change in the disability

for which he was temporarily retired. 10 U.S.C. § 1210(a) (1982). The Secretary is required to make a final determination upon the expiration of five years, at which time the member may be returned to active duty, placed on permanent disability or discharged with or without severance pay, 10 U.S.C. § 1210(b) (1982); AFR 35–4, ¶ 3–47(a)–(j) (1989).

4. The AFPB is a board within the Secretary of the Air Force Personnel Council. The AFPB reviews certain disability cases sent to the Council after the IPEB review is complete. The AFPB has the authority to prepare revised findings and recommendations, or to refer the case to a formal PEB. AFR 35–4, ¶ 1–3(i) (1989).

5. "The formal PEB hearing provides the full and fair hearing as required by law." AFR 35–4, ¶ 1–3(g) (1989). The formal PEB is similar to the informal PEB in that it makes findings and recommendations with regard to the member's fitness for duty. The member may personally appear before the FPEB and may be represented by civilian legal counsel. *Id.*

6. The PDAB is the second and final board within the Secretary of the Air Force Personnel Council which considers disability appeals. The PDAB reviews cases where the AFPB has revised the findings or recommendations of an earlier board and the member has not agreed with those findings. AFR 35–4, ¶ 1–3(i) (1989).

that the plaintiff was fit for duty. The PDAB recognized the decreased range of motion in the plaintiff's left arm, but found that "this restricted motion does not overcome the presumption of fitness for duty." Admin.Rec. at 69. The PDAB concluded that the AFPB's determination was correct, and held that the plaintiff was fit for duty. In accordance with the findings of the PDAB and the discretion granted him by 10 U.S.C. § 1201 (1982),[7] the Secretary of the Air Force found that the plaintiff was fit for duty and directed that the plaintiff be retained in the Air National Guard and returned to active duty.

Because the plaintiff was no longer able to perform his duties as an Air National Guard pilot, his superior, Col. Fisk Outwater, removed him from his flying position and reassigned him as a "captain intelligence officer in excess status." Plaintiff's Reply Brief, App. A (May 24, 1993). In a memorandum dated March 24, 1993, Colonel Outwater advised the plaintiff of the effect that the Secretary's determination of fitness for duty would have on his career. The memorandum read as follows:

To: Major Gregory T. Rice

1. The 145th Airlift Group can not consider you for retraining due to not having any vacant or projected vacant non-rated major or higher positions.

2. What we have done is to remove you from a flying position and reassigned you to a captain intelligence officer position in an excess status. This is LAW NGR (AF) 35–2, Assignments in the Air National Guard, directives. You are an officer authorized retention [sic] by reason of being in a sanctuary zone. You

have over 18 years of satisfactory service but less than 20.

3. As of 22 Apr 93 you will have 19 years 9 months and 1 day of satisfactory service for retirement. You do not have sufficient retainability to formally retrain but you can temporarily help the organization in the intelligence field. Once you attain 20 satisfactory years of service for retirement you will be discharged from the North Carolina Air National Guard.

/s/

Fisk Outwater, Colonel, NCANG

Commander

Plaintiff's Reply Brief, App. A (May 24, 1993). The plaintiff served in his position as an intelligence officer until July 21, 1993. On September 29, 1993, after 20 years of satisfactory service, the plaintiff requested that he be placed in the inactive reserves.

In his complaint, the plaintiff argues that "[t]he actions of both the Physical Disability Appeal Board (PDAB) and the Air Force Personnel Board (AFPB) in overruling the Informal Physical Evaluation Board and the Formal Physical Evaluation Board were arbitrary and capricious and not supported by the evidence of the record." Compl. at ¶ 15. The plaintiff argues that the PDAB and the AFPB failed to follow their own regulations, and had they done so, they would have found the plaintiff unfit for duty and retired him at a 30 percent disability rating. According to the plaintiff, the statutory presumption of fitness for duty set forth in AFR 35–4, ¶ 33–3(b)–(c) (1989),[8] was applied to the plaintiff's case although it was improper to do so. The plaintiff argues that the PDAB and the

7. 10 U.S.C. § 1201 (1982) provides in pertinent part:

Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay * * * is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary *may* retire the member, with retired pay computed under section 1401 of this title * * *. [Emphasis added.]

8. Air Force Regulation 35–4, ¶ 3–33(b)–(c) (1989), concerning a member's presumption of fitness reads:

No member's case will be referred to a PEB unless either an MEB or HQ AFMPC/SGM determines that the member's medical qualification for worldwide duty is in doubt. Continued satisfactory performance of duty in the 12 months before the scheduled retirement date or normal separation date creates a presumption that the member is fit. * * * Members are unfit when they are clearly unable to perform the duties of their office and grade in such a manner as to reasonably fulfill the purpose of their employment on active duty.

AFPB incorrectly applied the presumption of fitness to the plaintiff's case when it should not have done so. The plaintiff contends that because his injury occurred in 1991, and because he has been unable to perform his duties as a pilot since that time, the presumption of fitness is inapplicable to his case. The plaintiff then concludes that in applying the presumption of fitness to his case, the PDAB and AFPB acted arbitrarily, capriciously and violated their own regulation.

The essence of the plaintiff's argument turns on the definition of the term "duty." The plaintiff stresses that he joined the Air National Guard to fly airplanes, not to gather intelligence. As such, the plaintiff believes that his "duty" consisted merely of flying airplanes—a duty that he is now unfit to perform. In his brief, the plaintiff contends that his "reassignment as a captain intelligence officer is not a position within [his] office or grade." Plaintiff's Reply Brief, at 10 (May 24, 1993). According to the plaintiff, "nothing in Plaintiff's background with the Air National Guard qualifies him for intelligence work. * * * In effect, Plaintiff is being forced to remain in the military beyond his ability to satisfactorily perform the duties of his office and grade." *Id.* at 10–11. As such, the plaintiff asks this Court to reinstate the findings of the FPEB, which found the plaintiff unfit for duty, and retire the plaintiff with a medical disability rating of 30 percent *nunc pro tunc* as of the date of his injury.

After the Secretary rendered his decision finding the plaintiff fit for duty, the plaintiff applied to the Air Force Board for the Correction of Military Records ("AFBCMR")[9] for review of his case. The AFBCMR has not yet rendered its decision as of this date.[10]

The defendant's threshold argument is that this Court does not have subject matter jurisdiction over the plaintiff's complaint, and

the defendant argues that the Court should dismiss this case pursuant to RCFC 12(b)(1). According to the defendant:

> Major Rice brought this action seeking, in part, a declaratory judgment. Specifically, Major Rice requests that this Court order a reversal of the Secretary of the Air Force's finding that he was "fit for duty" under the applicable regulations and, therefore, his status should be ordered changed from "active" to "medically disabled." * * *
>
> * * * * * . *
>
> Specifically, Major Rice seeks a declaration by this Court that he is unfit for further military service.

Defendant's Motion to Dismiss, at 3–5 (Mar. 12, 1993). The defendant argues that "[t]his Court lacks jurisdiction to entertain declaratory relief, absent those [sic] sounding in contract." *Id.* at 4. Further, the defendant contends that "Major Rice simply has no cause of action to sue for the benefits of a status to which he has not been appointed." Defendant's Response, at 5 (June 23, 1993) (citing *United States v. McLean,* 95 U.S. 750, 24 L.Ed. 579 (1878); *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); and *King v. United States,* 19 Cl.Ct. 703, *aff'd,* 918 F.2d 186 (Fed.Cir.1990)).

The Government also argues that even if this Court finds that it has jurisdiction over the subject matter of the plaintiff's complaint, the Secretary's determination that the plaintiff was fit for duty was neither arbitrary nor capricious. The defendant contends that despite the plaintiff's injury, the plaintiff was still fit to perform duties consistent with his rank and grade. Although the plaintiff could no longer serve as a pilot, the defendant believes that he was still reasonably able to fulfill the purpose of his employment on active duty as an intelligence officer.

---

**9.** The AFBCMR is the ultimate administrative remedy for dissatisfied members of the Air Force. AFR 35–4, ¶ 1–3(k) (1989); AFR 31–3, ¶ 2 (1992). The AFBCMR is charged with correcting military records by removing any error and injustice. AFR 31–3, ¶ 2 (1992). The Air Force is authorized, under 10 U.S.C. § 1552, to pay claims for amounts due to applicants as a result of the correction of the member's military records. *Id.* at ¶ 29.

**10.** Although the plaintiff's case in currently pending with the AFBCMR, both parties agree that this case is ripe for determination by this Court. Although the AFBCMR may eventually rule in the plaintiff's favor, the Secretary has rendered his final determination in this matter. Also, because AFBCMR review is a permissive remedy, it is not a prerequisite for review by this Court.

According to the defendant, the Air Force Regulation regarding fitness for duty "clearly demonstrates that the Air Force did not intend for the language * * * to be interpreted so narrowly as to restrict the analysis to whether or not Major Rice could serve as a pilot." Defendant's Response, at 11–12 (June 23, 1993).

*Discussion*

■ The Government requests that this Court dismiss the plaintiff's complaint for lack of subject matter jurisdiction. When evaluating a RCFC 12(b)(1) motion, the Court must accept as true any allegations of fact made by the nonmovant. *Scheuer v. Rhodes,* 416 U.S. 232, 234, 94 S.Ct. 1683, 1685, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The burden, however, is on the plaintiff to establish jurisdiction. *Reynolds,* 846 F.2d at 748.

■ The United States Court of Federal Claims is a court of limited jurisdiction. *Bath Iron Works Corp. v. United States,* 27 Fed.Cl. 114, 122 (1992), *aff'd,* 20 F.3d 1567 (Fed.Cir.1994); *American Maritime Trans., Inc. v. United States,* 870 F.2d 1559, 1563 (Fed.Cir.1989). Accordingly, congressional consent to suit in this Court waives the Government's traditional sovereign immunity, and must be clearly and unambiguously expressed. *Puget Sound Power and Light Co. v. United States,* 23 Cl.Ct. 46, 56 (1991) (citing *Library of Congress v. Shaw,* 478 U.S. 310, 318–19, 106 S.Ct. 2957, 2963–64, 92 L.Ed.2d 250 (1986)). "Therefore, it is undeniably clear that the party who files a complaint in this court must succinctly and unambiguously satisfy the jurisdictional requisites * * *." *Bath Iron Works,* 27 Fed.Cl. at 122. The Tucker Act, 28 U.S.C. § 1491 (1988), specifically provides that suit may only be brought in the United States Court of Federal Claims if it is:

founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491 (1988).

■ In the case at bar, the plaintiff argues that because his claim is "money-related" or "money-cast," his claim meets the jurisdictional requirements of the Tucker Act.[11] The plaintiff further argues that 10 U.S.C. § 1201 (1982) allows this Court to review *any* AFBCMR decision under the "arbitrary and capricious" standard. Plaintiff's Reply, at 2 (Oct. 26, 1993). The plaintiff's argument, however, erroneously combines two necessarily separate inquiries into one. As is true with any court, it is not necessary to inquire into the appropriate standard of review if the court does not have jurisdiction to hear the case. In the present case, the plaintiff has failed to establish that his claim falls within the scope of the Tucker Act. When specifically asked to address this Court's jurisdiction to hear his case, the plaintiff's counsel responded:

> I think I would define this case a little differently than my worth[y] opponent. I think the issue in this case is whether or not—not whether Major Rice is fit for duty, but whether or not the Air Force in adjudicating his case acted arbitrarily and capriciously and without substantial evidence to support their rulings. And the court does have jurisdiction to sort through those cases.

Hearing Transcript, at 19–20 (Nov. 22, 1993). The plaintiff's counsel further argued that:

> The Court of [Federal] Claims does have jurisdiction to determine whether or not the military acted arbitrarily and capriciously or rendered an opinion without substantial evidence in the record to support that decision.

11. It is the plaintiff's understanding that if the Secretary had retired him at a disability rating of 30 percent as of the date of his injury, the plaintiff would have received a monthly annuity of 50 percent of his base pay, 30 percent of which would be tax deductible, as of the date of his injury. Because the Secretary found the plaintiff

fit for duty, the plaintiff retired after twenty years of satisfactory service in the NCANG, which entitles him to a monthly annuity of 50 percent of his base pay, none of which is tax exempt, and payment begins only on the plaintiff's 60th birthday.

*Id.* at 22. To the contrary, there are many situations where this Court simply does not have jurisdiction to review the actions of the military under the "arbitrary and capricious" standard or any other standard. *See, e.g., Wilson v. United States,* 24 Cl.Ct. 842 (1992) (decision by Air Force to award plaintiff a lesser medal instead of the one recommended by his superior, allegedly depriving him of points necessary for promotion, was discretionary and not reviewable by Claims Court); *Anderson v. United States,* 22 Cl.Ct. 178 (1990), *aff'd,* 937 F.2d 623 (Fed.Cir.1991) (although Claims Court has jurisdiction in military cases seeking reinstatement, back pay, and allowances, it generally has no jurisdiction over cases arising under the Civil Rights Act); *Pardo v. United States,* 227 Ct.Cl. 377, 648 F.2d 1330 (1981) (United States Court of Claims is without jurisdiction to review military's determination of Variable Incentive Pay); *Barnett v. United States,* 223 Ct.Cl. 132, 617 F.2d 230 (1980) (absent constitutional error, Court of Claims is generally without jurisdiction to review court-martial proceedings); *Matias v. United States,* 19 Cl.Ct. 635 (1990), *aff'd,* 923 F.2d 821 (Fed.Cir.1990).

The basic principles of the military pay jurisprudence of this Court follow logically from the Court's jurisdictional grant pursuant to the Tucker Act. In *United States v. Wickersham,* 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906), the Supreme Court held that individuals who were unlawfully removed from federal service were entitled to sue in this Court under the Tucker Act. The *Wickersham* decision was based on the principle that an unlawful removal from federal service amounted to a legal nullity, and as such, the person illegally removed was entitled to retroactive pay, allowances and benefits that would have been payable but for the illegal removal. *Id.* at 399, 26 S.Ct. at 472. According to Justice Day:

> The case comes to this: The appellee, by his appointment, practically made by the Secretary of the Interior in entering his name in the classified list and designated him for the service required, was entitled to the privileges and emoluments of his position until he was legally disqualified by his own action or that of some duly authorized public authority.

*Id.* The Supreme Court held that "[w]here an officer is wrongfully suspended by one having no authority to make such an order, he ought to be, and is, entitled to the compensation provided by law during such suspension." *Id.* The plaintiff's situation in this case is entirely different from the situation addressed in *Wickersham.* In this case, the Secretary of the Air Force found the plaintiff *fit for duty,* and therefore did not remove him from his position in the Air Force. In fact, the plaintiff in this case complains that he was required to *remain* in a position he was legally entitled to hold. As such, the principle of legal nullity established in *Wickersham* is inapplicable to the case at bar.

In *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the Supreme Court further explored the "legal nullity" principle which defines this Court's jurisdiction over military pay cases under the Tucker Act. In *Testan,* the Supreme Court held:

> There is no claim here that either respondent has been denied the benefit of the position to which he was appointed. The claim, instead, is that each has been denied the benefit of a position to which he should have been, but was not, appointed. The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it.

*Id.* at 402, 96 S.Ct. at 955 (citing *United States v. Wickersham,* 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906); *United States v. McLean,* 95 U.S. 750, 24 L.Ed. 579 (1878); *Ganse v. United States,* 180 Ct.Cl. 183, 186, 376 F.2d 900, 902 (1967)). The plaintiff agrees that a disability retirement can be seen as a "position" within the meaning given that word by the Supreme Court in *Testan.* Nonetheless, the plaintiff requests that this Court place him in a position to which he has not been duly appointed. Like the plaintiff in *Testan,* the plaintiff here claims that he has been denied the benefit of a position to which he perhaps could have been, but was not, appointed. Again, to emphasize the basis of this Court's jurisdiction over military pay cases, "[t]he established rule is that one is not entitled to the benefit of a position

until he has been duly appointed to it." *Id.* Only upon his illegal removal from a position to which he has been duly appointed may a service member sue in this Court to retroactively recover pay and allowances mandated by statute.

In *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1968), the Supreme Court again addressed the nature and scope of this Court's jurisdiction over military pay cases. In that case, the plaintiff was involuntarily retired from the military for longevity over his objection that he should have been retired for physical disability. The plaintiff in *King* brought an action in the Court of Claims alleging that the Secretary of the Army's action in rejecting his disability retirement was arbitrary, capricious and not supported by the law, and asked the court for a judgment in the amount of the excess taxes he was forced to pay because he had been retired for longevity and not for disability. After reviewing the Tucker Act and the Declaratory Judgment Act, the Supreme Court held that "before [the plaintiff] is entitled to such a judgment he must establish in some court that his retirement by the Secretary of the Army for longevity was legally wrong and that he is entitled to a declaration of his right to have his military records changed to show that he was retired for disability." *Id.* at 3, 89 S.Ct. at 1502.

The defendant argues that the *King* case is factually and legally identical to the case at bar. Defendant's Motion to Dismiss, at 4 (March 12, 1993). The defendant contends that the plaintiff here, like the plaintiff in *King,* retired from the military for longevity over his objection that he should have been retired with a medical disability. As such, the defendant urges this Court to find that the relief the plaintiff seeks would amount to a declaratory judgment outside of this Court's jurisdiction. Although the plaintiff argues that *King* is inapplicable to the case at bar, his reasoning for this conclusion is not clear. *See* Plaintiff's Reply, at 5 (May 24, 1993). While this Court agrees with the defendant that it does not have jurisdiction to retroactively retire the plaintiff over the Secretary's finding of fitness, the *King* case cannot be seen as the basis for that decision.

In their briefs, both parties neglected to discuss the effect of Congress' statutory response to the *King* case in 1972. The reason that the *King* case is inapplicable to the case at bar is because on August 29, 1972, Congress amended 28 U.S.C. § 1491 so that in cases where monetary relief was properly requested, the Court, incident to its power to grant a monetary judgment, could also grant injunctive and declaratory relief. The amendment added the following language to 28 U.S.C. § 1491:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

The amendment was applicable to all judicial proceedings pending on or instituted after the date of its enactment. Pub.L. No. 92–415 (1972). While the 1972 amendment gave this Court the power to grant limited collateral equitable relief, it did not alter or modify in any way the basic jurisdictional prerequisites of the Tucker Act (*i.e.,* the requirement that some illegal action by the military caused the plaintiff to be removed from a status which, by statute, mandated the payment of money).

■ Query: Why then does 28 U.S.C. § 1491 provide for "placement in the appropriate duty or retirement status" if this Court does not have jurisdiction to force the military to retire one of its members? The answer to this question can be found in the legislative history of the 1972 amendment. In the amendment's legislative history, Congress described the class of cases over which this Court's predecessor had jurisdiction:

> The primary class of cases where a broader remedy is needed are suits filed on a money claim by a Government employee

who alleges that he was *illegally discharged.* At present, if the court finds that the employee was wrongfully discharged, it can award him back pay but it cannot order him reinstated to his former position. * * * A second important classification where the present limits on the remedies available in the Court of Claims imposes unwarranted burdens on the litigant is in cases involving military personnel. These generally are monetary claims which are based on *retirements in an improper status, such as failure to award disability retirement pay or retirement in proper rank.*

S.Rep. No. 92–1066, 92d Cong., 2d Sess. 2 (1972), U.S.Code Cong. & Admin.News 1972, pp. 3116–3118 (emphasis added). The amendment was not intended to extend the class of cases over which the Court of Claims had jurisdiction, but rather merely to provide an entire remedy which would complete the relief afforded by the judgment the Court could render. *Id.; see also,* U.S.C.C.A.N., 92d Cong., 2d Sess., 749, 3116, 5658 (1972); H.Rep. No. 92–1023, 92d Cong., 2d Sess. 2 (1972); Hearings before Subcomm. No. 2 of the Comm. on the Judiciary, House of Representatives, on H.R. 12392; 118 CONG.REC. 15009 (1972). These passages make it clear that the 1972 amendment granted the Court of Claims the collateral equitable jurisdiction to incidentally correct an already retired member's retirement status, not the primary equitable jurisdiction necessary to order the retirement of an individual from the military in the first instance.

Although the holding of *King* is limited by the amendment to 28 U.S.C. § 1491, it is still the rule that this Court may not grant declaratory relief if such relief is the primary focus of the plaintiff's suit. The inquiry, therefore, is not whether this Court has the power to grant declaratory relief at all, but rather whether the declaratory relief sought by the plaintiff is the primary or collateral focus of his suit. In the present case, the plaintiff asks this Court to retroactively retire him from the military. There can be no question that such a remedy, if granted, would be primarily equitable in nature.

This Court has historically handled a variety of military pay cases. None of them, however, have involved situations where the plaintiff's primary focus was on equitable rather than monetary relief. Despite his contention that this Court has jurisdiction over this type of case, the plaintiff has not been able to point to a single case where this Court required the military to retire one of its member's despite a ruling by the Secretary that the member was fit for duty. In fact, there are very limited factual settings where this Court has found jurisdiction over military pay cases—none of which have involved this Court ordering the military to retire a member that the Secretary has found fit for duty.

This Court regularly handles cases where the plaintiff alleges an involuntary separation from the service resulting from unlawfully prepared personnel papers. *See, e.g., Bockoven v. Marsh,* 727 F.2d 1558, 1563 (Fed.Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Engels v. United States,* 230 Ct.Cl. 465, 678 F.2d 173 (1982); *Greig v. United States,* 226 Ct.Cl. 258, 640 F.2d 1261, *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704 (1980); *Guy v. United States,* 221 Ct.Cl. 427, 608 F.2d 867 (1979); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979); *King v. United States,* 19 Cl.Ct. 703 (1990), *aff'd,* 918 F.2d 186 (Fed.Cir.1991). These cases logically descend from the *Wickersham* and *Testan* line of cases because the military has essentially illegally removed one of its members from a status entitling him to pay. This Court also reviews enlisted and commissioned personnel administrative separations that are alleged to be illegal. *Bray v. United States,* 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975); *Jamison v. United States,* 5 Cl.Ct. 747 (1984), *aff'd without opinion,* 765 F.2d 159 (Fed.Cir. 1985); *Russell v. United States,* 190 Ct.Cl. 591, 1970 WL 3482 (1970); *Clackum v. United States,* 148 Ct.Cl. 404, 296 F.2d 226 (1960). This Court also reviews courts martial and non-judicial punishment proceedings. *Matias v. United States,* 19 Cl.Ct. 635 (1990), *aff'd,* 923 F.2d 821 (Fed.Cir.1990); *Dumas v. United States,* 223 Ct.Cl. 465, 620 F.2d 247 (1980); *see Williams v. Secretary of Navy,*

787 F.2d 552 (Fed.Cir.1986). In addition, while this Court frequently entertains claims for military disability retirement pay pursuant to 10 U.S.C. § 1201–21, these cases invariably involve situations where a former service member had already been illegally and involuntarily placed in an incorrect retirement status upon the filing of his complaint. *Sawyer v. United States,* 930 F.2d 1577 (Fed.Cir.1991); *Robbins v. United States,* 29 Fed.Cl. 717 (1993); *Jordan v. United States,* 205 Ct.Cl. 65, 1974 WL 21686 (1974).[12]

Even if this Court found subject matter jurisdiction over the plaintiff's complaint, jurisdiction alone does not confirm the court's ability to supply relief. *Murphy v. United States,* 993 F.2d 871, 872 (1993), *cert. denied,* ─── U.S. ───, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). "A grant of jurisdiction to issue compliance orders hardly suggests an absolute duty to do so under all circumstances." *Id.* (citing *TVA v. Hill,* 437 U.S. 153, 193, 98 S.Ct. 2279, 2301, 57 L.Ed.2d 117 (1978)). The issue must also be justiciable and within the competence of the Court. According to the Supreme Court, justiciability is to be considered separate and apart from jurisdiction. Justiciability depends on a number of factors, including (i) whether the duty asserted can be judicially identified; (ii) whether the breach of that duty can be judicially determined; and (iii) whether the court can practicably mold a judicial remedy to protect the right asserted by the plaintiff. *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 699–70, 7 L.Ed.2d 663 (1962). "Justiciability is a particularly apt inquiry when one seeks review of military activities." *Murphy,* 993 F.2d at 872. As the Supreme Court held in *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953):

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Id.* While the types of cases enumerated above constitute limited examples of when this Court is authorized to review actions of the military, the Court must be ever vigilant not to exceed the boundaries set by Congress. There are thousands of routine personnel decisions that are held nonjusticiable, and the greater the amount of discretion given to the military by Congress in a given

---

12. A case not cited by either party, *Hrdina v. United States,* 5 Cl.Ct. 17 (1984), bears some discussion. In this case, an Air Force member brought an action challenging the determination of the PEB that he was fit for active duty at the time of his mandatory separation. While the Court rendered a decision in that case pursuant to RCFC 56, holding that the Secretary's determination of fitness was neither arbitrary nor capricious, that case is readily distinguishable from the one at hand. First, in that case, this Court's jurisdiction to hear the case was never an issue. Jurisdiction was neither briefed by the parties nor discussed by the Court in its opinion. Second, although it is not clear from the Court's opinion in *Hrdina,* it appears that the plaintiff was involuntarily retired contemporaneously with the Secretary's determination that he was fit for duty. In essence, as this Court sees it, the pivotal distinction between the *Hrdina* case and the case at bar is that the plaintiff in the *Hrdina* case was not requesting that this Court retire him from the military in contravention of the Secretary's determination that he was fit for duty. This factual distinction represents the difference between a request for this Court to exercise collateral equitable jurisdiction and a request for this Court to exercise primary equitable jurisdiction. The plaintiff further argues that *Ferrell v. United States,* 23 Cl.Ct. 562 (1991), allows this Court to change a former service member's retirement status—even if his separation was voluntary. If, indeed, the *Ferrell* case does stand for the proposition that this Court has jurisdiction to change a service member's status absent some illegal removal by the Government, this Court declines to follow that case. The case precedent is clear that "if an employee's retirement was voluntary, no jurisdiction resides in the United States Claims Court to review the case, and that the exercise of an option to retire is not rendered involuntary by the imminent imposition of a less attractive alternative, absent deception coercion or duress." *Tannehill v. United States,* 18 Cl.Ct. 296, 299 (1989) (and cases cited therein). Moreover, aside from the voluntary/involuntary distinction that is not an issue in this case, the plaintiff in *Ferrell* did not seek relief in the form of a court-ordered retirement.

area the more likely it is that a court will find the matter nonjusticiable. *Voge v. United States,* 844 F.2d 776 (Fed.Cir.1988). In fact, "judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct." *Murphy,* 993 F.2d at 873 (citing *Sargisson v. United States,* 913 F.2d 918, 922 (Fed.Cir.1990)).

■ By statute, the Secretary has great discretion in determining whether he will retire a member from the service. 10 U.S.C. § 1201 provides:

> Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty (other than for training under section 270(b) of this title), * * * is unfit to perform the duties of his office, grade, rank, or rating because of a physical disability, * * * the Secretary *may* retire the member, with retired pay * * *.

10 U.S.C. § 1201 (1988) (emphasis added). The word "may" in section 1201 grants the Secretary the discretion to either terminate the member's active duty early and "tap the Treasury for the disability retired pay," or to maintain the member on active duty. *Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir.1991). As this Court has recognized, the decision as to whether someone is fit for military service is one properly committed to those executive branch personnel charged with the responsibility of insuring a fit and ready armed force. *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985). This Court has indicated that the:

> responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province ... and ... courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

*Kirwin v. United States,* 23 Cl.Ct. 497, 505 (1991); *Heisig v. United States,* 719 F.2d 1153, 1156 (1983) ("[i]t is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province"); *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953); *Gilligan v. Morgan,* 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); *Brenner v. United States,* 202 Ct.Cl. 678, 685–86, 692, 1973 WL 21354 (1973), *cert. denied,* 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974).

In the case at bar, the plaintiff concedes that the Secretary has tremendous discretion over determining a member's fitness for duty at various points in the regulatory medical evaluation process. In fact, when asked about the medical evaluation process, the plaintiff's counsel responded:

> MR. PARDUE: Yes. We contend that he would have started drawing [50 percent of his base pay] several months after the formal Physical Evaluation Board had not the Air Force Review Board reversed the Physical Evaluation Board. He would be entitled to that until, under the TDRL, they will normally do an evaluation and that is also governed by the statute. I think the statute requires an evaluation within 18 months and the maximum period that he could stay on the temporary disability retired list is a total of five years. Most people are set for reschedule for another medical review of their case approximately a year after they go through the Physical Evaluation Board.

> THE COURT: And after five years what happens?

> MR. PARDUE: Well, at five years they either have to take them off the—they have to take them off the TDRL because the statute runs out. They have to return them to duty, separate them with severance pay or permanently retire them from service.

Hearing Transcript, at 23 (Nov. 22, 1993). While the plaintiff argues that it was arbitrary and capricious for the Secretary to fail to place him on the Temporary Disability Retirement List (TDRL), it is clear that the plaintiff would have had to overcome many other obstacles before he could ever be permanently retired and obtain the full disability retirement benefits he now seeks. Assuming, *arguendo,* that the Secretary, in his discretion, placed the plaintiff on the TDRL as

of the date of the FPEB decision, every 18 months, the Secretary would again use his discretion to determine whether the plaintiff should remain on the TDRL. Then, at the end of five years, the Secretary would again have to use his discretion to return the plaintiff to duty, separate him with severance pay or retire him with a disability rating. It is clear that the Air Force's medical evaluation process invokes the Secretary's discretion not just once, but on numerous occasions. Moreover, neither Congress nor the Air Force has developed sufficient "tests and standards" against which this Court could measure the Secretary's discretionary conduct at each stage in the medical evaluation process.

The plaintiff contends that *Sawyer v. United States*, 930 F.2d 1577 (Fed.Cir.1991), somehow limits the Secretary's discretion with regard to the medical evaluation process, but this is an inaccurate reading of *Sawyer*. Plaintiff's Reply, at 2, 5, 6 (May 24, 1993).[13] To the contrary, the *Sawyer* court held only that the plaintiff was entitled to statutory pay regardless of whether the Secretary chose to release him from service with a disability or retain him on active duty. *Sawyer*, 930 F.2d at 1580. The *Sawyer* court did not, however, limit in any way the Secretary's discretion as between those two alternatives. Moreover, that case is factually dissimilar to the case at bar because the *Sawyer* plaintiff did not request that the court discharge him from the service *nunc pro tunc*. The plaintiff in that case had already retired and simply requested that this Court place him in the correct retirement status. This Court has, without exception, refused to intervene on behalf of plaintiffs who seek administrative discharges, promotions or find themselves performing unpleasant or objectionable military duty assignments. In these arenas, military discretion is simply not subject to review in the courts. *Strait v. Laird*, 406 U.S. 341, 353, 92 S.Ct. 1693, 1699, 32 L.Ed.2d 141 (1972); *Orloff v. Willoughby*,

345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Noyd v. McNamara*, 378 F.2d 538 (10th Cir.1967); *United States ex rel. Schonbrun v. Commanding Officer*, 403 F.2d 371 (2d Cir.1968); *Antonuk v. United States*, 445 F.2d 592 (6th Cir.1971).

## CONCLUSION

Based on the foregoing, this Court does not have the primary equitable jurisdiction that would be required to force the Secretary to retroactively and permanently retire a member who he has found to be fit for duty. Because the plaintiff has suffered no illegal action by the military removing him from a status entitling him to statutory pay, this Court lacks the jurisdiction to grant him the equitable relief he seeks. For the foregoing reasons, the defendant's Motion to Dismiss is granted, the plaintiff's Cross–Motion for Summary Judgment is denied, and the plaintiff's complaint will be dismissed.

Each party is to bear its own costs.

---

**13.** The plaintiff cites *Ferrell v. United States*, 23 Cl.Ct. 562 (1991) for the same proposition. Again, a key factual distinction between *Ferrell* and the case at bar is that the plaintiff in *Ferrell* was not asking that the court exercise primary equitable jurisdiction to retire him contrary to the Secretary's finding that he was fit for duty. The plaintiff in that case was objecting to what he claimed to be an illegal action on the Government's part by placing him in an incorrect retirement status. *See supra* note 12.